57 CCPA

**DUFFY–MOTT COMPANY, Inc.,**
**Appellant,**

**v.**

**CUMBERLAND PACKING COMPANY,**
**Appellee.**

**Patent Appeal No. 8253.**

United States Court of Customs
and Patent Appeals.

April 30, 1970.

Sandoe, Neill, Schottler & Wikstrom, New York City, attorneys of record, for appellant. Nichol M. Sandoe, New York City, of counsel.

Alex Friedman, New York City, for appellee. Harold D. Steinberg, Steinberg & Blake, Blum, Moscovitz, Friedman, Blum & Kaplan, New York City, of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and McMANUS, Chief Judge, Northern District of Iowa, sitting by designation.

RICH, Acting Chief Judge.

Opposer appeals from the decision of the Patent Office Trademark Trial and Appeal Board, 154 USPQ 498, dismissing two oppositions [1] to the registration of two versions of the trademark "Sweet 'N Low" for "low calorie sugar substitute." One version [2] is merely the word-mark and the other version [3] is the word-mark superposed on a background consisting of a treble musical staff, with the treble clef to the left of the word-mark.[4] The specimens filed in both applications are the same and depict the mark only in the second version. Applicant claims first use in June of 1958.

The two oppositions were consolidated for trial and the board rendered a single decision. Applicant took testimony first and opposer took testimony only in rebuttal, applicant insisting throughout that it was not proper rebuttal.

The circumstances of this case are most unusual. It appears that each party, or a predecessor in business, had independently adopted and used "Sweet 'N Low," but on different goods, before applicant filed its applications in 1964. Each party, *after* commencing such use, acquired, by purchase from a third party, a registration of "Sweet 'N Low."

The record shows that May MacGregor, doing business as Ann Delafield in Pacific Palisades, California, claiming first use Feb. 20, 1954, filed two applications to register "Sweet 'N Low" on March 1, 1954. On one she obtained Reg. No. 599,748 on Dec. 21, 1954, for use on "carbonated soft drinks." On the other she obtained Reg. No. 603,115 on Mar. 8, 1955, for use on "canned, frozen, and fresh fruits and vegetables, pudding powders, jams, jellies, and prepared pie and cake mixes." There is nothing whatever in the record showing what, if any, business May MacGregor or "Ann Delafield" was doing or ever did under the mark.

By a conventional assignment of the trademark "Sweet 'N Low" and Reg. No. 603,115, together with the goodwill of the business in connection with which the trademark is used, May MacGregor, on Feb. 21, 1956, assigned her rights therein "for food products of all kinds *and not including carbonated beverages*" (our emphasis) to Pratt-Low Preserving Company of Santa Clara, California, and this assignment was recorded in the Patent Office Feb. 28, 1956. These rights came into the hands of opposer, Duffy-Mott, through mesne assignments, when opposer acquired a successor, Pratt-Low Preserving Corporation, on November 10, 1960, and set it up as a division of Duffy-Mott Company, Inc. The latter assignment was recorded Dec. 1, 1960.

1. Nos. 45,019 and 45,030.

2. Serial No. 187,255, filed February 24, 1964.

3. Serial No. 187,256, filed February 24, 1964.

4. While the record does not refer to it, the genesis of the mark would appear to be Alfred Lord Tennyson's song, included in "The Princess" at the conclusion of Part II,

 Sweet and low, sweet and low,
 Wind of the Western sea,
 etc.

Opposer predicates its opposition on this registration, No. 603,115, and also on alleged use of the trademark "on artificially sweetened, low calorie canned fruits by appellant and its predecessors in business from a time prior to appellee's date of first use of the mark * *."

May MacGregor similarly assigned her other registration of the same mark, No. 599,748, *for use on carbonated soft drinks,* to applicant, Cumberland Packing Company, several years after Cumberland had commenced its use of the mark on a sugar substitute and had a substantial going business thereunder. Applicant is a partnership. The founding partner and directing force, Mr. Eisenstadt, testified that he bought this mark and registration in January or February of 1961.[5] Though opposer's brief argues that the record in these oppositions "is devoid of any proof that applicant is the owner of registration No. 599,748 or that it is the owner of any rights in the trademark SWEET 'N LOW derived from May MacGregor," the record contains, in addition to the above Eisenstadt testimony, a copy of the registration, issued on its face to May MacGregor, and two title reports by the Assignment Branch of the Patent Office certifying that title to that registration was in applicant as of Nov. 30, 1964. These title reports were supplied because each of the applications at bar contained sworn statements by Mr. Eisenstadt that "Applicant is the owner by assignment of U. S. Trademark Registration No. 599,748" and the examiner requested the title reports.[6]

Each party hereto, therefore, is the owner of a Principal Register registration of "Sweet 'N Low" issued on applications having identical filing dates.

There are other interesting circumstances.

Opposer's registration, No. 603,115, is on the "Sweet 'N Low" mark for use on "CANNED, FROZEN, AND FRESH FRUITS AND VEGETABLES, PUDDING POWDERS, JAMS, JELLIES, AND PREPARED PIE AND CAKE MIXES." To maintain that registration in force, the then owner, Pratt-Low Preserving Corporation, on March 15, 1960, filed the usual combined affidavit under Sections 8 and 15 (15 U.S.C. §§ 1058, 1065) stating that the mark was then and had been in continuous use on all of those goods. However, in these proceedings Mr. Kearns, General Manager of opposer's Pratt-Low Division, who was employed by the Pratt-Low Company and successor Corporation in managerial positions from 1950, testified that neither of those organizations had ever put out, under the "Sweet 'N Low" mark, canned vegetables, pudding powder, prepared pie and cake mix, or frozen or fresh fruits and vegetables. Opposer does not deny this; it argues it was merely error due to "carelessness, misunderstanding or mistake and * * * not such as to constitute fraud." Applicant says it is such fraud as to preclude opposer from relying on the registration in this proceeding even though it is not ground for cancellation of the registration under the statute (15 U.S.C. § 1064 (c)), wherefore applicant could not have applied for cancellation. It urges application of the doctrine of unclean hands and says it would be "unfair" and "most inequitable" to permit opposer to rely on its registration.

On the other hand, with respect to applicant's registration of "Sweet 'N Low" and by way of the pot calling the kettle

---

5. Apparently applicant's attorney found the registration on a search and bought it for $500. Opposer's attorney appears to have been aware that the date of the assignment to applicant was Jan. 10, 1961, though the assignment is not of record in this appeal.

6. It is interesting to note that at the same time the examiner said, "If applicant is

the owner of Registration No. 603,115, a claim of ownership should also be set forth, supported by a title report." Applicant replied that it was not the owner of that registration. Nevertheless the applications were passed to publication, notwithstanding the examiner's awareness of the adversely held registration now relied on by opposer.

black, opposer points out that applicant has been using the R-in-a-circle symbol signifying registration of "Sweet 'N Low" as a trademark for use on low calorie sugar substitute notwithstanding the registration owned by applicant is only for use on carbonated soft drinks. Applicant says it used the R-in-a-circle symbol on advice of counsel that it could properly do so after it had purchased the registration from May MacGregor. Opposer says use of the symbol is "wrongful." Furthermore, it asserts that in applying for registration of the mark applicant did not disclose its use.

■ The board opinion recognizes these contentions in footnotes but does not appear to predicate any holding thereon. It said that applicant's explanation justified its use of the registration symbol. As to opposer's false affidavits, the board merely took note of the discrepancy between the allegations and the facts brought out by the testimony. What the board did, so far as the registrations are concerned, was to say, after taking note of opposer's claim to be the prior user of the mark "in the low calorie food field because of its registration,"

> As we see it, *on the basis of the registrations involved,* neither party is prior since both the registration relied on by opposer and the registration acquired by applicant were filed on the same day by the same party. [Emphasis ours.]

We find no error in that statement. Opposer's claim of error in it is predicated on what we consider a groundless assumption that applicant's low calorie sugar substitute is to be classed with "food," such as opposer's canned fruits, and cannot be classed with carbonated soft drinks. Opposer argues that May MacGregor sold Pratt-Low all rights in the food field and held out only the rights in the carbonated beverage field which it later sold to applicant. Opposer's brief says:

> Opposer is clearly prior in the food field, just as applicant may well be prior in the carbonated beverage field. The rights and priorities of the respective parties in their respective fields are clearly defined and are mutually exclusive. They should remain that way.

We are no more able to equate "Sweet 'N Low" sugar substitute with food than opposer is to equate it with carbonated beverages. The evidence shows that applicant's sugar substitute, which is principally sold in small paper packets as individual 1 gram servings equivalent to two teaspoons of sugar, consisted, when the testimony was taken, of 89% lactose (milk sugar), 10% calcium cyclamate, and 1% soluble saccharin.[7] Each packet contains only 3 calories compared to 36 or 37 for sugar of equivalent sweetening power. Asked if it is a food, Mr. Eisenstadt said, "Well, it has no nutritive value, so how could it be a food?" Again, asked to admit that lactose has some nutritive value, he said it did "But the product is certainly not sold for its nutrition, it's sold for its lack of nutrition." We therefore reject the argument that the MacGregor assignment of the mark to opposer, which read "for food products of all kinds and not including carbonated beverages," is any ground for finding error in the above-quoted passage from the board's opinion. In any event, none of the May MacGregor goods listed in her registrations was a sugar substitute or anything like it. She could not convey rights she did not have.

■ We have a further reason for holding that opposer can have no advantage in these proceedings from its registration, No. 603,115, purchased from May MacGregor. We agree with applicant that the act of opposer's predecessor in interest in filing a patently false com-

---

7. It is evident the formulation has been changed from time to time and we judicially notice that recently the cyclamate has been eliminated.

bined affidavit under sections 8 and 15 on March 15, 1960, precludes reliance in these proceedings on the registration thus maintained in force.

The only precedent cited to us by applicant on this point is Stardust, Inc. v. Birdsboro Knitting Mills, Inc., 119 USPQ 270 (TTAB 1958). In that case the opposer asserted a registration of STARDUST for hosiery along with others. The board said (footnote 5):

> The record indicates that there has been no use by opposer of its mark on hosiery since 1947 or 1948, and the statement that the mark was in use on hosiery made on behalf of opposer in the affidavit filed in 1954 in connection with Reg. No. 235,931 was untrue. Opposer therefore may not rely on this registration for any purpose in the Patent Office.

There can be no question of the substantiality of the untrue statement in that case—the registration was for hosiery alone and there had been no use thereon for several years, nor any excuse given for nonuse, so that the registration should not have remained in force. Opposer attempts to distinguish the present case on the ground that the mark "Sweet 'N Low" *had* been used on canned fruits, jams, and jellies, even though it had *not* been used on frozen and fresh fruits and vegetables, pudding powders, and pie and cake mixes, the inclusion of which in the affidavits, opposer says, was mere "carelessness, misunderstanding or mistake * * *." This raises two questions: (1) whether in fact the mark had been so used and (2) the effect of the untrue statement. We will have to discuss (1) later but for the present will direct our consideration to (2).

In conformity with the holding in *Stardust*, we are of the view that opposer may not rely on its registration for any purpose in the Patent Office or in this court on appeal therefrom. We consider that filing a sworn statement as far from the truth as was that which was filed precludes opposer from relying on the registration in these proceedings. This is in accord with the principle of the equitable doctrine of "unclean hands." Trademark rights under the statute are no longer divorced from equitable principles. Cf. 15 U.S.C. § 1069.

With respect to opposer's right to rely on its registration No. 603,115, the parties argue somewhat at cross purposes. Opposer's brief tries to make it appear that applicant is attempting to show abandonment of the mark by opposer with attendant invalidity of the registration. Applicant says it is not attacking the validity of the registration arguing, in fact, that under section 14 of the statute (15 U.S.C. § 1064) there is no ground on which it could have petitioned for cancellation. This is because under section 14(c), the only paragraph of section 14 which could possibly apply here, the false statements in the affidavit were not for the purpose of *obtaining* the registration. Applicant, therefore, asks that opposer be precluded from relying, in this proceeding, on a registration which he felt could not be attacked by a petition to cancel.[8]

In deciding this issue, we consider the purpose for which the false affidavit was filed in order to determine the importance of the untrue allegations. Under section 15 (15 U.S.C. § 1065), the "incontestability" provision, the registrant's *right to use the registered mark* becomes incontestable (subject to certain stated exceptions) "for the goods * * on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use * * *." The naming of the goods is therefore critical to the right acquired through the filing of the affidavit—an "incontestable" right to use. This is not a question of maintaining the registration in force, which can be done by an affidavit under section 8(a) (15 U.S.C. § 1058(a)) without naming any *partic-*

---

8. We need not rule on the correctness of applicant's assumption that section 14(c) did not permit him to petition for cancellation.

*ular* goods. (See Rule 2.162(c)). It is a matter of acquiring a new right with respect to the goods specifically recited in the affidavit. (See Rule 2.167(c)). If goods are named on which the mark has not been used continuously for 5 consecutive years, or is not currently in use, it amounts to an attempt to acquire a right as a result of a false statement. This can scarcely be characterized as mere carelessness or misunderstanding to be winked at as of no importance.

We deem such a sanction as we here apply necessary to deter the further development of such a cavalier attitude toward statements in affidavits under section 15 as appears in this case. Because opposer has attempted by false representations in the Patent Office to secure through this registration incontestable rights to use "Sweet 'N Low," it is precluded from relying on the registration in an attempt to defeat applicant's right to register.

 Apart from reliance on its registration, opposer also relies on its alleged prior use of "Sweet 'N Low" as a ground for opposing registration thereof to applicant for low calorie sugar substitute. It is not disputed that applicant's use commenced in June, 1958, has been continuous and increasing, and is now extensive. When the testimony was taken in 1966, applicant, with about 100 employees, was turning out between three and four million packets a day and doing a gross business therein of about two and a half million dollars a year. Opposer's alleged early use is that of its predecessors, the two Pratt-Low companies. The goods on which opposer alleges use of the mark comprised a line of canned fruits, jellies and preserves of low calorie content. This line was marketed originally as PRATT-LOW DIET-SWEET products. It is said that the company's advertising agency did not like this dual mark and, looking for a better one, conceived of SWEET 'N LOW, taking the "SWEET" from DIET-SWEET and the "LOW" from PRATT-LOW. A trademark search was made, the MacGregor registration was turned

up, and it was purchased in 1956. The first alleged use was in trade advertisements put out in 1955 but the mark was not exactly SWEET 'N LOW. It was in the following form:

Exhibit 3
[A1879]

After buying the MacGregor registration in 1956, the next phase apparently was to use can labels on canned fruit which featured PRATT-LOW beneath which were the words "diet sweet," prominently displayed on a red panel, the same label carrying on its side, i. e., between the front and back of the can, the following small panel:

**SWEET**
**IN FLAVOR**
**'n LOW** ®
**IN CALORIES**

Exhibit 4
[A1464]

The testimony and exhibits show that this use existed from 1956 into 1959. It is alleged that SWEET 'N LOW was used at about the same time on the line of jellies and preserves but the exhibits show the labels actually carried only the following mark:

**APPLE**
low calorie **Jelly**

[A1665]

What was being attempted was testified to by opposer's Pratt-Low Division General Manager as follows:

Q51. * * * it was the intent that we begin a slow transition from Pratt-Low Diet-Sweet to "Sweet 'N Low," so we entered it on the side panel, entered "Sweet 'N Low" on the side panel with the intent it would be a slow transformation into the main mark.

Q52. Why did you use the form on Exhibit 5? A. This is on Exhibit 5, the format of the "Sweet" and "Low" which was going to be our next step on the Pratt-Low Diet-Sweet canned fruit labels. It would evolve from the side mark into the main panel on the canned fruits. In other words, the jelly and preserve labels on Exhibit 5 would have been our next step on the canned fruit labels.

Q53. Now, you refer to this as plans for a transition. Did you actually ever complete this transition? A. No.

Q54. Will you explain the circumstances and why not? A. Well, this was supposed to be a slow transition, and we worked along for several years toward this end when Duffy-Mott came and acquired the assets of the corporation * * *.

* * * * * *

Q74. Did there come a time when you finally discontinued the sale of goods under labels like Exhibit 4? A. Yes. It [I ?] would estimate it would be in 1963.

This discontinuance was the result of a tapering off process that actually began in 1961 after the acquisition of Pratt-Low by Duffy-Mott on November 10, 1960. Apparently labels on hand were being used up over a period of a couple of years.

The next use of the mark was by opposer, Duffy-Mott, and consisted of "a few token shipments" of various canned fruits, "low calorie artificially sweetened," on the labels of which the primary source indication was "MOTT'S SWEET 'n LOW brand."

These shipments were said to have been in 1964 but the company did not like the labels and they were discontinued. The last event of record involving the mark is the advent of a low calorie apple sauce first shipped in September 1965 and labeled:

This, of course, took place a few months after the filing of the notices of opposition herein and over seven years after applicant's first use. Opponent's witness in 1966 stated that sales of the apple sauce were continuing and that the company intended to put out other fruit items "under the Mott's Sweet 'n Low brand."

The board's conclusion on the foregoing facts regarding use was thus expressed:

Insofar as any established use of the respective marks on low calorie products are [sic] concerned, applicant's use since 1958 is clearly prior to any use shown by opposer on such goods. Further, it should be noted that at the time the notices of opposition were filed in April 1965, opposer was not using the mark on any goods and did not recommence use thereof on apple sauce until five months thereafter. * * * Under all the circumstances in this case, we are not persuaded that opposer has established that it will be damaged by the issuance of the registrations sought by applicant herein.

We are in agreement with the conclusion reached by the board. Opposer's briefs admits "that at the precise time

**1102**

when the notices of opposition were filed in April 1965, opposer was not using the mark." As we view the matter, moreover, the labels above-designated as Exhibits 3 and 5 do not show the marks sought to be registered. Compared to the labels bearing PRATT-LOW and DI-ET-SWEET, they will be seen to be mere reversals of the order of those word combinations with changes in type, reading "diet Sweet" and "by Pratt Low." The products would quite surely, we feel, be called for as "Diet-Sweet." They were thus invoiced. The side panel of Exhibit 4 is a dubious trademark use of "Sweet 'n Low." Much weight is placed on the use of the R-in-a-circle after LOW as indicating that there is a trademark "SWEET 'n LOW" there. In the first place, purchasers do not go looking for the registration symbol. If they did, in the environment in which it appears they might think that LOW is what was registered. The panel description as a whole is a descriptive statement with typographical emphasis on the SWEET flavor and LOW calories of the product. In any event, all of these uses were discontinued upon the acquisition of Pratt-Low by Duffy-Mott. Finally, notwithstanding the low-calorie aspect of both opposer's canned goods and applicant's sugar substitute, the goods of the parties are very different in nature, appearance, and use and are non-competitive.

Under all the circumstances of this case, we conclude that the applicant has demonstrated rights superior to any established by opposer insofar as use of "Sweet 'N Low" as a trademark for sugar substitute is concerned. We agree with the board that issuance of the requested registrations will not damage opposer and the decision of the board is therefore affirmed.

Affirmed.