THIS DISPOSITION IS
CITABLE AS PRECEDENT
OF THE TTAB

Mailed:  February 4, 2003
Paper No. 35
cls

# UNITED STATES PATENT AND TRADEMARK OFFICE

## Trademark Trial and Appeal Board

The Toro Company
v.
GrassMasters, Inc.

Opposition No. 111,729
against Application Serial No. 75/330,526
filed on July 25, 1997

Linda M. Byrne of Merchant & Gould, P.A. for The Toro
Company.

Daniel D. Maynard and Elizabeth A. Dawn of Maynard Murray
Cronin Erickson & Curran, P.L.C. for GrassMasters, Inc.

Before Simms, Chapman and Drost, Administrative Trademark
Judges.

Opinion by Simms, Administrative Trademark Judge:

The Toro Company (opposer), a Delaware corporation,

has opposed the application of GrassMasters, Inc.

(applicant), an Illinois corporation, to register the mark

LAWN PUP ("LAWN" disclaimed) for lawn mowers.[1]  After

---

[1] Application Serial No. 75/330,526, filed July 25, 1997, based upon
applicant's allegation of use in commerce since March 17, 1997.

applicant submitted its answer, a trial was conducted and briefs were filed. Applicant submitted a request for an oral hearing but later withdrew that request.

The Pleadings

In opposer's notice of opposition, opposer asserts that applicant's mark LAWN PUP for lawn mowers so resembles opposer's previously used and registered mark LAWN-BOY for lawn mowers, lawn mower blades, grass catcher bags and various attachments to lawn mowers (Registration No. 1,232,529, issued March 29, 1983, Section 8 and 15 accepted and acknowledged); for lubricants and fuel conditioning additives, and other goods and services relating to lawn mowers (Registration No. 1,173,842, issued October 20, 1981, renewed); for various educational services relating to the maintenance and repair of internal combustion engines and lawn mowers (Registration No. 1,162,254, issued July 21, 1981, renewed); the mark SNOW PUP for snow plows (Registration No. 802,632, issued January 25, 1966, renewed); and the mark SNOW PUP (not registered) for printed materials for snow throwers and snow plows such as owner's manuals and parts catalogs, as to be likely to cause confusion, to cause mistake or to deceive.

In its answer, applicant denied these allegations and asserted that "LAWN" is descriptive or generic and in

2

common use in the lawn maintenance field such that it is not distinctive of opposer's goods, and that opposer has abandoned the mark SNOW PUP as a result of discontinued use for more than three years with no intention to resume use.

The record of this case consists of testimony (and exhibits) submitted by both parties, opposer's pleaded registrations, dictionary definitions and some of applicant's discovery responses, all relied on by opposer's notice of reliance, and dictionary definitions, third-party registrations and some of opposer's discovery responses, all relied on by applicant's notice of reliance.

Opposer's Record

Opposer took the testimony of Michael Happe, its senior marketing manager of the consumer division. In 1989 opposer acquired the mark LAWN-BOY from the Outboard Marine Corporation and has used the mark for lawn mowers and related goods and services since that time. Mr. Happe testified that the LAWN-BOY mark has been continuously used by predecessor companies and by it since 1933. Opposer primarily uses this mark to identify gas-powered walk-behind mowers. These goods are sold through approximately 3,000 dealers nationwide including such outlets as home centers, hardware stores, department stores and co-op stores. The LAWN-BOY models sell in the price range of

3

$250 to $600. Sales of opposer's LAWN-BOY mowers average around $50 million per year with annual advertising and promotional expenditures being several million dollars. Opposer's goods are advertised and promoted in television and radio commercials, by print ads, point-of-sale materials, direct mail and at trade shows.

According to Mr. Happe, a LAWN-BOY mower may last on average about eight to ten years. About 58 percent of opposer's customers are repeat LAWN-BOY mower buyers (Happe dep., 83). Opposer sold LAWN-BOY electric mowers but stopped making those mowers in 1999 (Happe dep., 89). Mr. Happe testified that gas and electric mowers are competitive products (Happe dep., 127-128).

Mr. Happe testified that opposer's LAWN-BOY mark is very well-known in the power equipment field. It is one of the top five brands in the power equipment and lawn mower field in the United States (TORO, HONDA, JOHN DEERE, CRAFTSMAN, and LAWN-BOY), sometimes ranking in the top three in the walk-behind power mower field. This mark is opposer's most important brand name except for the TORO mark, according to Mr. Happe. Further, Mr. Happe testified that opposer has enforced its mark by successfully opposing others' attempts to register such marks as LAWN BOSS, LAWN SCOUT, LAZY BOY and LAWN MAN (Happe dep., 28). Mr. Happe

4

testified that opposer is aware of third-party uses of the marks LAWN CHIEF and LAWN FLIGHT for lawn mowers.

Around 1964, opposer started making and selling SNOW PUP snow plows or snow throwers.[2] However, opposer stopped making these goods in the late 1970s.[3] Further, Mr. Happe stated (dep., at 37) that SNOW PUP snow throwers "were probably sold as late as 1980 possibly." He testified that he is not aware of any intention on the part of opposer to resume sales of SNOW PUP snow throwers in the near future. Until recently, opposer has sold snow throwers under the mark LAWN-BOY (Happe dep., 56). Mr. Happe testified that many homeowners still own SNOW PUP snow throwers. Opposer continues to sell parts for these snow throwers, although no mark appears on these parts. Mr. Happe testified that the mark SNOW PUP continues to be used on owner's manuals, as well as on parts and service manuals for dealers, 32 SNOW PUP manuals having been sold or distributed since 1995 and 16 operator's manuals having been given to homeowners in recent years.

Mr. Happe testified that he is aware of no instances of actual confusion between opposer's marks LAWN-BOY and SNOW PUP and applicant's mark LAWN PUP.

---

[2] In its testimony, opposer uses "snow plows" and "snow throwers" interchangeably. The registration lists "snow plows."
[3] In a discovery response, opposer indicated that it discontinued use of the SNOW PUP mark for snow plows or snow throwers in 1978.

In discovery responses, opposer admitted that it does not have exclusive rights in the terms "LAWN" and "PUP."

Applicant's Record

Applicant took the testimony of its president, James Morris. Applicant commenced the business of selling lawn mowers, generators and leaf vacuums in 1996, with the first sale of LAWN PUP small electric lawn mowers occurring in 1997. While originally applicant sold its goods through catalogs (e.g., Sharper Image and Brookstone), and on cable television (e.g., QVC), applicant now sells its electric lawn mowers through national retail chains such as Sears, Home Depot, Ace Hardware and Tru-Value. Applicant's goods are sold in some of the same stores as opposer's, and applicant has displayed its goods at some of the same trade shows as has opposer. Applicant sells its goods in all 50 states. Fewer than 100,000 mowers have been sold. However, Mr. Morris testified that there have been no instances of actual confusion or even any inquiries concerning the relationship of the parties' goods sold, respectively, under the marks LAWN-BOY and LAWN PUP.

Applicant has made of record numerous third-party registrations covering lawn mowers which contain the word "LAWN." These include the registered marks LAWNFLITE, LAWN GENERAL, LAWN HAWK, LAWN GENIE, LAWN CHAMP, LAWN-PRO,

LAWNCYCLER and LAWN CHIEF. Most of these registrations contain a disclaimer of the word "LAWN."

Mr. Morris testified that he attempted to obtain a SNOW PUP parts catalog from several dealers but was unable to do so.

Arguments of the Parties

While opposer acknowledges that the term "LAWN" in its mark is descriptive, it is opposer's position that applicant's mark LAWN PUP is "almost identical" in sight, sound, and connotation to its mark LAWN-BOY. Both marks consist of two words--an identical first adjectival word followed by a short, three-letter, one-syllable word. Opposer also argues that the words "boy" and "pup" have "related meanings" of an inexperienced young man because a young boy is sometimes referred to as a "pup." Also, a typical nickname for a male dog is "boy." As for the goods, the description of goods in opposer's registrations and applicant's application (lawn mowers) is identical. This description is unlimited as to the type or size of the lawn mowers. Further, the record shows that the parties' goods have been sold through the same trade channels, such as mass retailers, department stores, home centers and hardware stores. The parties' goods have been displayed at some of the same trade shows.

As a result of longstanding use, extensive sales and advertising, opposer maintains that the LAWN-BOY product is one of the top five products among power equipment and lawn mowers and is among the top-ten selling mowers in the country with sales averaging around $50 million per year. The only other third-party products, of which opposer is aware, with the word "LAWN" in their marks are LAWN CHIEF and LAWN FLIGHT lawn mowers. Further, the third-party registrations made of record by applicant are not persuasive because they are not evidence of the commercial use of those marks or of consumer awareness, according to opposer.

While opposer maintains that it should prevail on the basis of its LAWN-BOY mark alone, opposer also insists that it has continued rights and residual goodwill in the mark SNOW PUP because many homeowners still use these snow plows or snow throwers and opposer still distributes SNOW PUP owner's manuals and service manuals. Opposer argues that abandonment must be proven by clear and convincing evidence.

Because of opposer's prior use and registration, opposer contends that any doubt on the issue of likelihood of confusion must be resolved in its favor.

Applicant, on the other hand, maintains that opposer's mark for lawn mowers used in lawn maintenance is a "weakly protected mark" (brief, 19) because of the admitted third-party uses and the numerous registrations of "LAWN-" formative marks for lawn mowers and related lawn maintenance goods and services. This evidence is relevant to the strength and distinctiveness of opposer's mark and demonstrates, according to applicant, that the LAWN-BOY mark is not entitled to a broad scope of protection. Applicant also argues that it is using the term "LAWN" in its mark in "the primary and denotative sense" (brief, 24). Further, the remainder of the respective marks, "BOY" and "PUP," are very different in sound and meaning (male child vs. young dog).

With respect to the goods, applicant maintains that its electric mower with a 13-inch swath is ideally suited to small lots where bigger mowers are not needed, and that its mower weighs less than half of most mowers. Opposer's lawn mower, on the other hand, is gas powered and has a 21-inch swath. These lawn mowers are sold to different types of consumers, according to applicant. Also, in view of the expense of lawn mowers, these goods are not purchased on impulse, but more care is used in the purchasing decision. Applicant also contends that the adoption of its mark was

9

in good faith, and points out that there have been no instances of actual confusion.

Concerning opposer's SNOW PUP mark, applicant maintains that this mark has been abandoned,[4] and that there is no intention to resume sales of SNOW PUP snow throwers in the future. The use of this mark on isolated products such as owner's manuals does not save the mark from abandonment, according to applicant. Furthermore, the marks SNOW PUP and LAWN PUP are different, each beginning with a different descriptive word and are or have been used for different goods.

Opinion

The likelihood of confusion determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the likelihood of confusion factors set forth in *In re E.I. du Pont de Nemours and Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). In considering the evidence of record on these factors, we keep in mind that "[t]he fundamental inquiry mandated by §2(d) goes to the cumulative effect of differences in the essential characteristics of the goods

---

[4] Applicant has not filed a counterclaim to cancel opposer's registration of the mark SNOW PUP, which was last renewed in 1986. As noted, opposer also claims common law rights in the mark SNOW PUP for its manuals and catalogs.

10

[or services] and differences in the marks." *Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976).

First, we shall turn to the goods of the parties. It is well settled that the issue of likelihood of confusion must be determined in light of the goods set forth in the opposed application and pleaded registration or registrations and, in the absence of any specific limitations therein, on the basis of all normal and usual channels of trade and methods of distribution for such goods. See, e.g., *CBS Inc. v. Morrow,* 708 F.2d 1579, 218 USPQ 198, 199 (Fed. Cir. 1983); *Squirtco v. Tomy Corp.,* 697 F.2d 1038, 216 USPQ 937, 940 (Fed. Cir. 1983); and *Paula Payne Products Co. v. Johnson Publishing Co., Inc.,* 473 F.2d 901, 177 USPQ 76, 77 (CCPA 1973). In this regard, we must presume that applicant's goods--lawn mowers--include all types of lawn mowers, and not just the electric lawn mowers that applicant actually sells under the mark at this time. See *Canadian Imperial Bank of Commerce v. Wells Fargo Bank, N.A.,* 811 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir. 1987); *Paula Payne Products Co. v. Johnson Publishing Co., Inc.* supra, and *In re Opus One Inc.,* 60 USPQ2d 1812, 1817 (TTAB 2001). Accordingly, for our purposes, the goods of the parties are considered to be identical, and, therefore,

sold in the same channels of trade and to the same classes of prospective purchasers.

Nevertheless, lawn mowers are relatively expensive goods which would not be casually or impulsively purchased. Rather, they would be purchased after some consideration by the homeowner or other person needing to buy a lawn mower.

Next, we turn to a determination of whether applicant's mark LAWN PUP and opposer's registered mark LAWN-BOY, when compared in their entireties, are similar or dissimilar in terms of sound, appearance and connotation or meaning. The test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the goods or services offered under the respective marks is likely to result. The principle is well established that, in articulating reasons for reaching a conclusion on the issue of likelihood of confusion, while the marks are compared in their entireties, including descriptive or disclaimed portions thereof, "there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties." *In re*

12

*National Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985). Disclaimed or descriptive terms, though they must be considered when comparing marks, typically are less significant. *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1003-04 (Fed. Cir. 2002).

The marks LAWN-BOY and LAWN PUP have only the first word in common. However, opposer has conceded that this word is descriptive of lawn mowers, and that others use such marks as LAWN CHIEF and LAWN FLIGHT for lawn mowers. While the word cannot be ignored, its importance in the similarity-of-marks determination is less significant than if it were an arbitrary or fanciful word.

The second words in the marks have obvious differences in sound, appearance and meaning. While both words may signify a young version of their species, they are otherwise different in meaning, "boy" referring to a young man while "pup" refers to a young dog. We also note that applicant's specimens in the application file depict a small dog or puppy alongside the mark LAWN PUP. Furthermore, there is no evidence that purchasers think of dogs when they see or hear opposer's mark LAWN-BOY.

However, the similarity of the marks must also be analyzed in terms of the fame of the prior mark. "The fifth *du Pont* factor, fame of the prior mark, plays a

13

dominant role in cases featuring a famous or strong mark." *Kenner Parker Toys, Inc. v. Rose Art Industries, Inc.*, 963 F.2d 350, 22 USPQ2d 1453, 1456 (Fed. Cir. 1992). See also *Recot, Inc. v. M.C. Becton*, 214 F.3d 1322, 54 USPQ2d 1894 (Fed. Cir. 2000). Although fame alone does not overwhelm the other *du Pont* factors in this case, fame deserves its full measure of weight in assessing likelihood of confusion. *Recot, Inc. v. M.C. Becton, supra.*

Opposer's mark has been long and extensively used and advertised, according to the record, and is one of the leading brands of walk-behind power lawn mowers. While it is entitled to a broad scope of protection, we must also realize that the only identical element of the marks is the admittedly descriptive first word "LAWN." Moreover, opposer has acknowledged the existence of such third-party marks as LAWN CHIEF and LAWN FLIGHT for lawn mowers. While we have accorded the LAWN-BOY mark a broad scope of protection, under the circumstances of this case we find that this fame does not warrant a finding that the marks LAWN-BOY and LAWN PUP are sufficiently similar to cause a likelihood of confusion. *Cf. Kenner Parker Toys, Inc. v. Rose Art Industries, Inc., supra,* involving such other facts as the testimony of an expert witness concerning the "graphic confusability" of the marks involved in that case

14

(PLAY-DOH and FUNDOUGH), the inexpensive nature of the toy molding compounds which, the Court observed, would be purchased without much care, as well as the similarities of trade dress; and *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.,* 748 F.2d 669, 675, 223 USPQ 1281, 1284 (Fed. Cir. 1984), also involving the much less expensive goods (spices).  As noted above, opposer's goods range in price from $250 to $600, and, while applicant's lawn mowers are not this expensive, consumers are likely to exercise some degree of care in making their purchases of lawn mowers.  Further, the fact that a mark may be famous does not necessarily or inexorably lead to the conclusion that confusion is likely, for the other relevant *du Pont* factors much also be considered.

We have also considered the fact that, while the respective goods have been sold virtually side-by-side in some of the same stores, there have been no reported instances of actual confusion in the last five years.

Under all of the circumstances of this case, we conclude that applicant's mark LAWN PUP does not so resemble opposer's registered mark LAWN-BOY used for identical goods as to be likely to cause confusion.

Next, we consider the issue of likelihood of confusion with respect to opposer's other registered mark, SNOW PUP

for snow plows. Initially, we note that opposer stopped making SNOW PUP snow plows or snow throwers in 1978, although sales from inventory possibly continued until 1980. Happe dep., 37. Despite this fact, in 1986 opposer nevertheless filed with the USPTO an affidavit of renewal under Section 9 of the Act, 15 USC §1059, stating that the registered mark was still in use for the goods recited in the registration (snow plows). This was approximately six years after opposer had stopped manufacturing and selling these goods under the SNOW PUP mark. And at trial, about 21 years after opposer stopped making and selling these goods, and with no use of the mark on snow plows since that time, opposer's witness testified that opposer still had no intention to resume use of the mark in the near future. Moreover, even with respect to replacement parts for SNOW PUP snow plows or snow throwers, the mark does not appear on those goods.

As noted above, applicant has asserted abandonment as an affirmative defense but has not counterclaimed to cancel this registration on this ground. While this evidence cannot, therefore, be considered for purposes of possible cancellation of this registration, we believe the evidence is nevertheless relevant to the question of whether opposer

should be able to rely on this registration in support of its claim of likelihood of confusion in this proceeding.

In *Duffy-Mott Co., Inc. v. Cumberland Packing Co.*, 424 F.2d 1095, 165 USPQ 422 (CCPA 1970), the Court of Customs and Patent Appeals (a predecessor court of the U.S. Court of Appeals for the Federal Circuit), precluded the plaintiff in that case from relying upon a pleaded registration where, like here, there was no counterclaim or petition to cancel that registration. In that case, the plaintiff's predecessor had filed a combined affidavit under Sections 8 and 15 attesting to the continued use of the mark involved in that case when the mark had not in fact been in use on those goods. The Court stated, 165 USPQ at 424, 425:

> We agree with applicant that the act of opposer's predecessor in interest in filing a patently false combined affidavit under sections 8 and 15 on March 15, 1960, precludes reliance in these proceedings on the registration thus maintained in force…
> …[W]e are of the view that opposer may not rely on its registration for any purpose in the Patent Office or in this court on appeal therefrom. We consider that filing a sworn statement as far from the truth as was that which was filed precludes opposer from relying on the registration in these proceedings. This is in accord with the principle of the equitable doctrine of "unclean hands."

See also *Lever Brothers Company v. Shaklee Corporation*, 214 USPQ 654, 659-660 (TTAB 1982) ("While ordinarily, in a proceeding before this Board, a Principal Register registrant is entitled to rely upon the presumptions of validity, ownership and exclusive right to use accorded under the provisions of the Trademark Act, we have determined that such presumptions are effectively rebutted where there is clear and unmistakable evidence in the record that the registered mark is invalid due to its having been abandoned, obtained on the basis of a false statement or subject to some other material defect. Where such unmistakable evidence exists, the registration is not accorded any evidentiary value in regard to the issues in a proceeding before us.") and authority cited therein; *Stardust, Inc. v. Birdsboro Knitting Mills, Inc.*, 119 USPQ 270 (TTAB 1958)(quoted with approval in *Duffy-Mott*)(Board precluded the plaintiff from relying on its pleaded registration where it had filed an untrue post-registration affidavit attesting to continuous use where there had in fact been no continued use of the mark in connection with the goods for six or seven years); and Vol. 3, J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, §20:22 (4th ed. 2002).

Here, it is undisputed that opposer has not used its SNOW PUP mark on snow plows since at least 1980. Snow plows are the only goods recited in the identification of goods in the registration. Even opposer in its brief acknowledges that the mark has not been used on snow plows "for many years." Opposer's reply brief, 3. Despite this lack of use, opposer filed an affidavit in 1986 asserting that the mark was still in use in commerce on snow plows.[5] Opposer has never alleged any excuse for this nonuse. Indeed, opposer's witness has testified that, even now, it has no intention to resume use. The CCPA and this Board have cautioned parties about relying on registrations that should have been cancelled or allowed to lapse for abandonment but nonetheless remained in force because the registrant filed affidavits asserting use of the mark with the Office when, in fact, there was no use. See *Duffy-Mott*, 165 USPQ at 424-25 (When discussing the *Stardust* case, the CCPA noted "There can be no question of the substantiality of the untrue statement in that case--the registration was for hosiery alone and there had been no use thereon for several years, nor any excuse given for

---

[5] At the time, Section 9 required the registrant to file a verified application for renewal "setting forth those goods or services recited in the registration on or in connection with which the mark is still in use in commerce and having attached thereto a specimen or facsimile showing current use of the mark…"

nonuse, so that the registration should not have remained in force… In conformity with the holding in Stardust, we are of the view that opposer may not rely on its registration for any purpose in the Patent Office or in this court on appeal therefrom"). Similarly here, opposer is prohibited from relying on the presumption of validity of its registration of the mark SNOW PUP for snow plows and, therefore, we need not consider it as a basis for its claim of likelihood of confusion. *Cf. Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 USPQ2d 1483 (Fed. Cir. 1986), where petitioner sought cancellation of a registration on the basis of fraud in the filing of a renewal affidavit, the Court stated, 1 USPQ2d at 1484, 1485:

> An essential element of the application for renewal is the registrant's averment that the mark as registered is in current use for the goods covered by the registration or the reasons for the mark's nonuse. The purpose of this requirement, like that in section 8 of the Lanham Act, is "to remove from the register automatically marks which are no longer in use."
> …Clearly, under the circumstances, Torres knew or should have known that the mark as registered and the specimen submitted were not currently in use when he filed his renewal application.
> …In addition, he submitted an affidavit stating the mark was in use on wine, vermouth, and champagne when he knew it was in use only on wine.

> If a registrant files a verified renewal application stating that his registered mark is currently in use in interstate commerce and that the label attached to the application shows the mark as currently used when, in fact, he knows or should know that he is not using the mark as registered and that the label attached to the registration is not currently in use, he has knowingly attempted to mislead the PTO.

Finally, we also find that applicant's mark LAWN PUP for lawn mowers is not confusingly similar to opposer's common law mark SNOW PUP for owner's manuals and parts catalogs relating to snow plows or snow throwers. Aside from the fact that opposer has sold or distributed less than 50 of these manuals or catalogs in the last seven years, these goods are so different from lawn mowers, and are distributed through different channels of trade (normally by mail to the individual or retailer requesting it, in the case of the manuals and catalogs) that even the possibility of likelihood of confusion is remote.

Decision: The opposition is dismissed.