32 C.C.P.A. (Patents)

### BAKER et al. v. ALTHER.

**Patent Appeals No. 4994.**

Court of Customs and Patent Appeals.

May 22, 1945.

Pennie, Davis, Marvin & Edmonds, of New York City (Louis D. Forward, of New York City, of counsel), for appellants.

Charles M. Thomas, of Washington, D. C. (Clarence O. McKay, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in an interference proceeding from a decision of the Board of Interference Examiners of the United States Patent Office awarding priority of the subject matter of the involved counts to appellee.[1]

The counts are:

"1. In the production of polymerized olefins wherein a heated gaseous mixture containing a substantial amount of normally gaseous higher olefins is passed at a temperature not susbtantially in excess of about 550° F. in contact with a catalyst and the product resulting from the catalyzing operation is subjected to fractional separation in a stabilizing chamber to form a liquid product and a composite normally gaseous product lean with respect to its content of higher olefins, the improvement which comprises withdrawing at least a portion consisting of a controlled quantity of the composite lean gaseous product of the stabilizing operation, and introducing said portion into the catalyzing operation together with fresh heated gaseous mixture containing a substantial amount of higher olefins, whereby a predetermined concentration of higher olefins is maintained in the catalyzing operation.

"2. In the production of polymerized olefins wherein a heated gaseous mixture containing a substantial amount of normally gaseous higher olefins is passed at a temperature not substantially in excess of about 550° F. in contact with a catalyst and the product resulting from the catalyzing operation is subjected to fractional separation in a stabilizing chamber to form a liquid product and a composite normally gaseous product lean with respect to its content of higher olefins, the improvement which comprises withdrawing at least a portion consisting of a controlled quantity of the composite lean normally gaseous product and returning said portion to the catalyzing operation, the return of said portion being so regulated as to produce a

---

[1] This cause was originally decided by this court on April 9, 1945. Thereafter, counsel for appellants filed a petition for rehearing. The rehearing was granted solely for the purpose of permitting the court to revise certain language in its original decision to which counsel for appellant directed the court's attention.

predetermined concentration of higher olefins in the catalyzing operation."

On September 25, 1941, the Primary Examiner declared an interference between appellants' patent No. 2,242,771, issued May 20, 1941 on an application filed June 23, 1937, Serial No. 149,862, and an application of appellee filed July 28, 1941, Serial No. 404,273. That application is a division of application Serial No. 279,668, filed June 17, 1939, which in turn is a continuation of application Serial No. 16,309, filed April 15, 1935.

The invention is sufficiently described in the counts commencing with the words "the improvement which comprises, etc." in each count. The counts are claims copied from the patent with immaterial modifications.

Appellants filed a preliminary statement on November 22, 1941, the earliest date alleged therein being later than appellee's filing date. In response to an order by the Examiner of Interferences to show cause why judgment on the record should not be entered against them, appellants filed a motion to shift the burden of proof, alleging that the divisional application was not entitled to the effective filing date of April 15, 1935, when appellee's first application was filed, for the reason that the subject matter of the counts was neither disclosed nor inherent in appellee's earliest application, and that appellee was estopped to claim priority of invention in the absence of proof of conception coupled with diligence with respect to the invention, for the reason that the assignee of appellee's application had been advised prior to December 27, 1937 of successful commercial operations involving the invention by the assignee of appellants and that notwithstanding such knowledge appellee presented no claim involving the recirculation phase of the invention directly to the catalytic polymerization zone of any hydrocarbons until June 17, 1939, the date of the continuing application, and that no claim corresponding to the specific matter here in issue was made until July 28, 1941, the date of the divisional application. Appellants alleged that such delay in filing constituted prima facie evidence of abandonment and suppression of the involved subject matter and precluded an award of priority on the record in the absence of evidence rebutting such prima facie case.

The Examiner of Interferences dismissed the motion as to the second ground, which he stated "sets forth matters relating to priority," but set the motion for hearing on the first ground before the Primary Examiner, who denied the motion. Another order to show cause was thereupon issued, and in response thereto appellants again requested that times be set for taking of testimony and final hearing for the same reasons alleged in the second part of their response to the original order. Thereafter such times were set. Subsequently appellee filed a motion to vacate that action, on the ground that appellants' response to the order to show cause presented no question upon which testimony is permissible. The Examiner of Interferences, after a renewal of that motion by appellee, vacated his action in view of the express waiver of appellee's right to take testimony.

Thereafter appellants moved to reset the times for taking testimony and final hearing, supporting their motion by an affidavit of one of the appellants alleged to support a charge of abandonment, suppression and estoppel and precluding an award of priority to appellee under the doctrine of Mason v. Hepburn, 13 App.D.C. 86.

In his decision on that motion the Examiner of Interferences pointed out that all of the acts referred to therein and in the affidavit took place subsequent to appellee's earliest filing date, April 15, 1935, and stated that if upon final hearing that record date stands there was no possibility that any testimony by appellants with respect to concealment or suppression under the Mason v. Hepburn doctrine would have any pertinency, relevancy or utility with respect to priority, and conversely if appel- lee at the final hearing was held not to be entitled to his earliest date for constructive reduction to practice appellants would be awarded priority on their filing date and testimony would be futile. The examiner stated that if appellee disclosed the invention defined by the counts in his earliest application and could relate back to that date, the suppression doctrine could not be applied for the reason that appellee would be the first of the parties to take steps to place the invention before the public. The motion of appellants was dismissed. The Board of Interference Examiners thereafter awarded priority of invention of the subject matter of the counts to appellee.

Appellants in their brief state that the two principal questions to be determined on this appeal are, first, does the first appli-

cation of appellee disclose the subject matter in issue, and, second, assuming that it does contain such disclosure, is appellee entitled to the benefit of the filing date of his earliest application for a constructive reduction to practice or do his actions "under the very unusual circumstances here prevailing" establish prima facie such a suppression as would deprive him of the right to assert priority of invention?

It appears that the drawings in appellee's first application and his continuing application are identical, and that both include the drawing of the last-filed divisional application as part thereof line for line, letter for letter, number for number, and that the specifications of the two former applications with respect to the drawing of the last-filed application read directly thereon.

The claims of the first application were finally rejected and two days before the expiration of the period for response thereto the second or continuing application was filed, the claims thereof, according to appellants, being merely colorably different from those of the first application. The two applications were substantially identical in their specifications except that the second was termed a continuing application. For the reason that the time for appeal from the rejection of the claims of the first application expired, it became abandoned, but the continuing application was still alive and had been copending with the first application. The claims of the continuation were finally rejected by the Primary Examiner, from which rejection an appeal was taken to the Board of Appeals on July 29, 1941. In view of new grounds of rejection the Primary Examiner withdrew the final rejection and after amendments had been submitted, on September 19, 1942 again finally rejected the claims. No appeal was taken from that decision and the continuing application became abandoned on March 20, 1943. The divisional application was filed July 28, 1941, and was therefore copending with the continuing application.

■ There can be no question in view of the copendency of each of the latter applications with the former application that ap-

pellee is entitled to the benefit of his earliest date, April 15, 1935, for conception and constructive reduction to practice.

■ Appellants, in effect, admitted that the counts read on the involved application when they made no motion to dissolve. They further admit that the apparatus (which as we have hereinbefore pointed out is contained in the apparatus disclosed in the first application of appellee) could be so operated as to carry out the process here involved. Their contention is that the disclosure of the first application of appellee is "sufficiently indefinite so as not definitely to preclude recirculation of the recycle stock to the catalytic polymerization zone without intervening treatment in the pyrolytic conversion step at a time when the recycle stock happens to be lean with respect to its content of higher olefins, but there is no definite disclosure of such an operation."

Both the Primary Examiner and the Board of Interference Examiners properly held that the two prior applications of appellee set out three alternative routes for his recycle stock. One of these routes includes passing the stock to a heater, after which it passes directly to the polymerization zone. That route meets the limitations of the involved counts, and as we have stated appellants in effect admitted that the counts read on the involved application.

Appellee in filing his applications as above set out has done what he is entitled to do under the law, and therefore it is unnecessary to discuss suppression, concealment and abandonment.

■ A supplement consisting of a letter from counsel for appellee directed to the Commissioner of Patents in the prosecution of appellee's first application was added to this record upon motion of appellants, consented to by appellee, subject to the taxing of costs. We are of opinion the said supplement was not necessary to a determination of our decision, and therefore costs will be taxed against appellants.

For the reasons hereinbefore stated, the decision of the Board of Interference Examiners is affirmed.

Affirmed.