# United States Court of Appeals for the Federal Circuit

---

**IMMERSION CORPORATION,**
*Plaintiff-Appellant*

**v.**

**HTC CORPORATION, HTC AMERICA, INC.,**
*Defendants-Appellees*

---

2015-1574

---

Appeal from the United States District Court for the District of Delaware in No. 1:12-cv-00259-TBD, Judge Richard G. Andrews & Circuit Judge Timothy B. Dyk (by designation).

---

Decided: June 21, 2016

---

JOSEPH R. PALMORE, Morrison & Foerster LLP, Washington, DC, argued for plaintiff-appellant. Also represented by MARC A. HEARRON, BRYAN LEITCH; HAROLD J. MCELHINNY, San Francisco, CA; MARC DAVID PETERS, BRYAN J. WILSON, Palo Alto, CA.

DAN L. BAGATELL, Perkins Coie LLP, Phoenix, AZ, argued for defendants-appellees. Also represented by RYAN J. MCBRAYER, ERIC MILLER, Seattle, WA; JOHN PETER SCHNURER, San Diego, CA.

BENJAMIN M. SHULTZ, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for amicus curiae United States. Also represented by BENJAMIN C. MIZER, CHARLES M. OBERLY, III, MARK R. FREEMAN; THOMAS W. KRAUSE, WILLIAM LAMARCA, FARHEENA YASMEEN RASHEED, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

GEORGE FRANK PAPPAS, Covington & Burling LLP, Washington, DC, for amicus curiae Intellectual Property Owners Association. Also represented by PAUL BERMAN, JOHN ARTHUR KELLY, RANGANATH SUDARSHAN; HERBERT CLARE WAMSLEY, JR., Intellectual Property Owners Association, Washington, DC; PHILIP STATON JOHNSON, Johnson & Johnson, New Brunswick, NJ; KEVIN H. RHODES, 3M Innovative Properties Company, St. Paul, MN.

_____

Before PROST, *Chief Judge,* LINN and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

This case involves one necessary condition, under 35 U.S.C. § 120, for treating a patent application, filed as a continuation of an earlier application, as having the earlier application's filing date, not its own filing date. That timing benefit shrinks the universe of "prior" art for determining validity. The condition at issue, as relevant here, is that the continuation application be "filed before the patenting" of the earlier application. The question is whether, for that condition to be met, the continuing application has to be filed at least one *day* before the earlier application is patented, or whether an application may be "filed before the patenting" of the earlier application when both legal acts, filing and patenting, occur on the same day.

We adopt the latter position. The statutory language does not compel, though it certainly could support, adoption of a day as the unit of time for deciding if filing is "before" patenting. And history is decisive in permitting the same-day-continuation result, under which, using units of time of less than a day, a "filing" is deemed to occur before "patenting." The Supreme Court approved same-day continuations in 1863, and the 1952 Patent Act, which introduced section 120, was broadly a codification of existing continuation practices. And same-day continuations have been approved by a consistent, clearly articulated agency practice going back at least half a century, which has plausibly engendered large-scale reliance and which reflects the agency's procedural authority to define when the legal acts of "filing" and "patenting" will be deemed to occur, relative to each other, during a day.

We reverse the district court's contrary holding and remand. *Immersion Corp. v. HTC Corp.*, No. 1:12-cv-00259, 2015 WL 627425 (D. Del. Feb. 11, 2015).

BACKGROUND

On January 19, 2000, Immersion Corporation filed with the United States Patent and Trademark Office a patent application disclosing a mechanism for providing haptic feedback to users of electronic devices. On August 6, 2002, that application issued as U.S. Patent No. 6,429,846. Meanwhile, Immersion had filed International Application No. PCT/US01/01486, and that application was published as WO 01/54109 on July 26, 2001. The written description of the WO '109 publication is materially identical to that of the '846 patent. Under 35 U.S.C. § 102(b) (2006), the WO '109 publication became invalidating as to claims to subject matter disclosed in that

publication unless those claims were entitled to an effective filing date before July 26, 2002.[1]

Beginning in August 2002, *i.e.*, after the July 2002 date, Immersion filed in the United States a series of applications that similarly shared the written description of the '846 patent and for which Immersion asserted an entitlement to an effective filing date of January 19, 2000, the filing date of the '846 patent's application. Immersion invoked 35 U.S.C. § 120, under which, as relevant here, "[a]n application for patent for an invention [that is] disclosed" adequately (as specified in certain portions of 35 U.S.C. § 112)

> in an application previously filed in the United States . . . shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application.

35 U.S.C. § 120. It is not disputed here that section 120 allows multiple links of such "continuation" applications in a chain leading back to an earlier application as long as each link meets the section's requirements.

Here, one link is contested. Immersion filed an application—which eventually matured into U.S. Patent No.

---

[1] The parties in this case have relied on the version of § 102(b) that was in effect before the America Invents Act amendments to § 102 took effect. *See* Leahy–Smith America Invents Act, Pub. L. No. 112-29, §§ 3(b), 3(n)(1), 125 Stat. 284, 285–87, 293 (2011). Section 120 also was amended in 2011 and 2012, but the language at issue here, quoted *infra*, was not changed. Accordingly, we refer simply to 35 U.S.C. § 120 without giving a date.

7,148,875—on August 6, 2002, the same day that the '846 patent issued. The present dispute is whether the '875 patent's application was "filed before the patenting" of the '846 patent's application and hence is entitled to the 2000 filing date of the '846 patent. No other requirement of section 120, *e.g.*, an adequate disclosure, is in dispute.

Later links in the relevant chain are not contested here. Immersion filed additional applications that the parties accept as direct or indirect continuations properly tracing back to the '875 patent's application, each filed at least one day before its predecessor application was patented (or, in one instance, abandoned). *See* HTC Br. at 5 (patent family tree). That process led to the three patents at issue in this appeal, U.S. Patent Nos. 7,982,720, 8,031,181, and 8,059,105, all of which share a written description with the WO '109 publication.

In early 2012, Immersion sued HTC Corp. and HTC America, Inc. (collectively, HTC) for infringing the '720, '181, and '105 patents (as well as two other patents no longer at issue). HTC sought summary judgment that the asserted patent claims are invalid under 35 U.S.C. § 102(b) (2006) because the WO '109 publication of July 26, 2001, disclosed the subject matter of those claims. The decisive issue was the priority date to which the patents at issue are entitled based on the chain of applications tracing back to the '846 patent—specifically, whether the link between the '875 patent's application and the '846 patent's application met section 120's timing requirement.

The district court (Judge Andrews) held that the '875 patent's application was not "filed before the patenting" of the '846 patent's application within the meaning of section 120, because they were filed on the same day. The correctness of that conclusion is the issue before us. It is undisputed here that, if that conclusion is correct, the patents at issue are not entitled to the '846 patent's

application's January 19, 2000 filing date, but only to a filing date of August 6, 2002, the actual filing date of the '875 patent's application. It is likewise undisputed that the consequence is that the patents are invalid because the WO '109 publication was published more than one year before August 6, 2002. *Immersion*, 2015 WL 627425, at *2–4.

Immersion and HTC settled as to the other two patents at issue, as to which the district court (Judge Dyk), in entering final judgment, dismissed Immersion's claims with prejudice. The final judgment also ruled in favor of HTC as to the '720, '181, and '105 patents, based solely on the earlier summary judgment of those patents' invalidity. Immersion appeals, challenging the district court's interpretation of section 120 as barring a second application from receiving the filing date of a first application (even if other section 120 requirements are met) when the second application is filed on the same day that the first one issues, not the day before or earlier. We have jurisdiction under 28 U.S.C. § 1295(a)(1) and review de novo the district court's interpretation of section 120. *See Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1381 (Fed. Cir. 2012).

## DISCUSSION

Section 120 provides, in relevant part:

[a]n application for patent for an invention disclosed . . . in an application previously filed in the United States . . . shall have the same effect, as to such invention, as though filed on the date of the prior application, *if filed before the patenting* or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application.

35 U.S.C. § 120 (emphasis added). Section 120 was included in the Patent Act of 1952, and the language relevant here has remained materially unaltered since then. *See* Act of July 19, 1952, Pub. L. No. 82-593, § 120, 66 Stat. 792, 800; Act of November 14, 1975, Pub. L. No. 94-131, § 9, 89 Stat. 685, 691–92; Patent Law Amendments Act of 1984, Pub. L. No. 98-622, § 104(b), 98 Stat. 3383, 3384–85; Intellectual Property and Communications Omnibus Reform Act of 1999, Pub. L. No. 106-113, App'x I, § 4503(b), 113 Stat. 1501, 1501A-563–64; Leahy–Smith America Invents Act, Pub. L. No. 112-29, §§ 3(f), 15(b), 20(j)(1), 125 Stat. 284, 288, 328, 335 (2011); Patent Law Treaties Implementation Act of 2012, Pub. L. No. 112-211, §§ 102(5), 202(3), 126 Stat. 1527, 1531, 1536.

Section 120's language does not by its terms answer the question whether a later-filed application can claim the same filing date as an earlier-filed application when the later one is filed on the day of the earlier one's patenting. Section 120's language requires that the later application be "filed before the patenting" of the earlier. But that language does not say that the unit of time is a day, as opposed to some smaller unit. As far as that language goes, filing can precede patenting on the same day.

The central premise of HTC's position—that neither of two events on the same day can be "before" the other—is that time under the section 120 language at issue must be measured with a "date-level granularity," *i.e.*, in units no smaller than a "day." HTC Br. at 18–19; Oral Arg. at 21:44–23:00. HTC's brief relies on that premise from the very start, embedding the premise in its foundational framing of the issue as whether "'before' a statutory deadline means 'before' that date, not 'on or before.'" HTC Br. at 3; *id.* at 1 ("'Before' a statutory deadline means *before* that date, not *on or before* that date."). The formulation presupposes the answer in referring to "date[s]" and even in using the phrase "*on or* before": "on a day" is ordinary usage; "on a minute" or "on a moment" or "on a

time" is not. And it is only on that presupposition that the dichotomy between "before" and "on or before" is forceful, as it has been precisely in cases involving *day* (equivalently, *date*) language. *See, e.g., United States v. Locke*, 471 U.S. 84, 90, 96 n.11 (1985); *Burton v. Stevedoring Servs. of Am.*, 196 F.3d 1070, 1073 (9th Cir. 1999); *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 900 F.2d 384, 385 (D.C. Cir. 1990). But that dichotomy is inapplicable, or at best question-begging, where the statutory language, as with the phrase at issue here, does not actually speak in terms of days or dates. Here, quite simply, the language at issue, considered alone, does not resolve the crucial unit-of-time issue.

We must therefore widen the lens to look beyond the specific phrase at issue. That widening immediately reveals how pervasively the Patent Act elsewhere, including in other phrases within section 120, specifies time by express reference to days, months, or years. *See, e.g.*, 35 U.S.C. §§ 3(e)(1), 6(d), 21(a), 41(a)(8), 41(b)(2), 100(i), 111(a)(4), 115(f), 119(a), 120, 154(a)(2), 156(d)(5)(E), 183, 291(b), 321(c); 35 U.S.C. § 102(b) (2006); *but cf.* 35 U.S.C. § 156(d)(1) (other agency's permission for marketing, if transmitted after 4:30 p.m. Eastern time on a day, is "deemed" given the next "business day"). But even apart from other considerations, the significance of that fact for the present issue is not unidirectional. The prevalence of date-based usage elsewhere in the statute does not by itself determine the meaning of a statutory phrase (like the one at issue here) that does *not* refer to a unit of time: differences in text often furnish a reason for differences in meaning.

To be sure, the usage elsewhere in the Act means that the particular language of section 120 that is at issue here can bear a day-as-unit meaning. That meaning might even be the most natural one to adopt—the one that would fit best with the statute as a whole—if the statute were new and without history, whether pre-enactment or

post-enactment.  But that is not the posture in which the question is presented.  We cannot properly disregard the history bearing on the interpretive question, and that history, we think, is so weighty as to be determinative.

Long before Congress enacted section 120 in the 1952 Act, the Supreme Court in *Godfrey v. Eames*, 68 U.S. (1 Wall.) 317 (1864), established the basis for same-day continuations for priority-date purposes.  There, Mr. Godfrey had withdrawn a previously filed patent application and, on the same day, refiled his application with an amended specification.  *Id.* at 324.  The Court held that "if a party choose to withdraw his application for a patent . . . intending at the time of such withdrawal to file a new petition, and he accordingly do so, the two petitions are to be considered as parts of the same transaction, and both as constituting one continuous application, within the meaning of the law."  *Id.* at 325–36.  It adopted that position for purposes of giving the earlier application's priority date to the successor application (where the two were sufficiently related).  And in the decades following *Godfrey*, the Supreme Court, other federal courts, and the Patent Office consistently followed *Godfrey*'s rule.  *See Smith v. Goodyear Dental Vulcanite Co.*, 93 U.S. 486, 500–01 (1877); *Badische Anilin & Soda Fabrik v. A. Klipstein & Co.*, 125 F. 543, 554–55 (C.C.S.D.N.Y. 1903); *Ex parte Kruse*, 133 O.G. 229 (Comm'r Pat. 1908); *Ex parte Miller*, 305 O.G. 419, 419–20 (Comm'r Pat. 1922); *Clark Blade & Razor Co. v. Gillette Safety Razor Co.*, 194 F. 421, 422 (3d Cir. 1912); *In re Febrey*, 135 F.2d 751, 754–56 (CCPA 1943); *Harder v. Hayward*, 150 F.2d 256, 258–60 (CCPA 1945).[2]

---

[2]    When the Patent Office held that a later-filed application could not claim the benefit of an earlier-filed application's filing date if the earlier application had already been allowed (even if the patent had not issued),

The 1952 Act was the first to put continuation practice fully into statutory text, which it did through section 120.[3] The Senate report accompanying House Bill 7794, 82d Cong. (1952), describes section 120 as written to "express in the statute certain matters which exist[ed] in the law [up to that point] but which had not before been written into the statute, and in so doing make some minor changes in the concepts involved," and also to "represent[] [then-]present law not expressed in the statute, except for the added requirement that the first application must be specifically mentioned in the second," S. Rep. No. 82-1979, at 6, 20 (1952); *see also* H.R. Rep. No. 82-1923, at 7, 20 (1952) (same); *Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 556 (Fed. Cir. 1994). Accordingly, "the practice prior to the 1952 Act is pertinent." *In re Henriksen*, 399 F.2d 253, 258 (CCPA 1968). None of the legislative history or contemporaneous commentary indicates an intent to alter *Godfrey*'s long-established result approving same-day continuations for priority-date purposes. And adjudicatory reliance on *Godfrey* continued after 1952. *Ex parte Ziherl & Kish*, 116 U.S.P.Q. 162, 166 (Pat. Off. Bd. App. 1957); *Hovlid v. Asari*, 305 F.2d 747, 748 (9th Cir. 1962); *Clover Club Foods Co. v. Gottschalk*, 178 U.S.P.Q. 505, 506–07 (C.D. Cal. 1973).

---

*see In re Application filed April 17, 1940*, 51 U.S.P.Q. 80 (Comm'r Pat. 1941); *In re Application filed July 10, 1940*, 49 U.S.P.Q. 566 (Comm'r Pat. 1941), our predecessor court rejected that position, *see Harder*, 150 F.2d at 258–60; *In re Febrey*, 135 F.2d at 754–56.

[3] An issue involving the filing of a new application by an applicant that had failed to pay a fee after allowance was addressed for a time in R.S. § 4897, which was repealed in 1939. *See In re Febrey*, 135 F.2d at 753–57.

Soon after the 1952 Act's enactment, the PTO promulgated 37 C.F.R. § 1.78(a) (1960), stating that "the benefit of the filing date of [a] prior application" can be obtained when "an applicant files an application claiming an invention disclosed in a prior filed *copending* application." (Emphasis added.) That word on its face would naturally include, not exclude, the same-day situation, and in any event, the word's prior usage makes that understanding clear. "Copending" had regularly been used in the field to describe the relationship between an earlier-filed application and its later-filed continuation, often with reference to *Godfrey*, which involved the same-day situation. *See McBride v. Teeple*, 109 F.2d 789, 797 (CCPA 1940); *Febrey*, 135 F.2d at 754–57; *Baker v. Alther*, 149 F.2d 942, 944 (CCPA 1945); *Harder*, 150 F.2d at 257; *In re Coleman*, 189 F.2d 976, 978 (CCPA 1951); 2 Anthony William Deller, *Walker on Patents* § 184, at 874 (1937); P.J. Frederico, *Commentary on the New Patent Act*, 35 U.S.C.A. (1954), *reprinted in* 75 J. Pat. & Trademark Off. Soc'y 161, 192–93 (1993); *see also* Lincoln B. Smith, *Continuing Applications*, 10 J. Pat. Off. Soc'y 105, 107, 110 (1927) (describing "[t]he law as deduced from *Godfrey*" as "a later copending application . . . is a 'continuing' application . . . and [is] entitled to the filing date of the earlier [application]," and listing 30 court and PTO decisions applying *Godfrey*).

Not surprisingly, then, the agency soon went beyond the term "copending" (with its *Godfrey*-based meaning) to be more explicit about the same-day situation. Although an early edition of the Manual of Patent Examining Procedure defined "copending" by simply echoing section 120's language, MPEP § 201.11 (2d ed. 1953), every later edition of the MPEP, beginning in 1961, specifically notified the public of the agency practice concerning same-day filing and patenting: "If the first application issues as a patent, it is sufficient for the second application to be *copending* with it if the second application is

filed *on the same day or before* the patenting of the first application." MPEP § 201.11 (3d ed. 1961) (emphases added). And even as 37 C.F.R. § 1.78 has been amended, and the MPEP revised over the decades, the agency has consistently maintained its clearly stated position for half a century now. *See* 37 C.F.R. § 1.78(d) (2015) ("An applicant in a nonprovisional application . . . may claim the benefit of one or more prior-filed *copending* nonprovisional applications . . . under the conditions set forth in 35 U.S.C. § 120 . . . and this section.") (emphasis added); MPEP § 211.01(b) (9th ed. 2014) ("If the prior application issues as a patent, it is sufficient for the later-filed application to be *copending* with it if the later-filed application is filed on *the same date, or before the date* that the patent issues on the prior application.") (emphases added).

The Supreme Court has long recognized that a "longstanding administrative construction," at least one on which reliance has been placed, provides a powerful reason for interpreting a statute to support the construction. *Zenith Radio Corp. v. United States*, 437 U.S. 443, 457–58 (1978); *see McLaren v. Fleischer*, 256 U.S. 477, 481 (1921). The Court has emphasized the weight of this consideration in patent law in particular. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 32 (1997); *see Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1347 (Fed. Cir. 2010) (en banc). Investment-backed expectations and reliance interests in patent law are often strong. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 739 (2002); *see Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2410 (2015).

Here, HTC's position would disturb over 50 years of public and agency reliance on the permissibility of same-day continuations. Several patents claiming effective filing dates in reliance on the PTO's articulated position have been the subject of litigation in the recent past. *See Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1349, 1352 (Fed. Cir. 2010); *Ultratec,*

*Inc. v. Sorensen Commc'ns, Inc.*, 45 F. Supp. 3d 881, 910 (W.D. Wis. 2014); *MOAEC, Inc. v. MusicIP Corp.*, 568 F. Supp. 2d 978, 980–82 (W.D. Wis. 2008); *Merch. Techs., Inc. v. Telefonix, Inc.*, No. 05-CV-1195, 2007 WL 464710, at *1 (D. Or. Feb. 7, 2007); *A & E Prods. Grp., L.P. v. Mainetti USA Inc.*, No. 01 Civ. 10820, 2004 WL 345841, at *1 (S.D.N.Y. Feb. 25, 2004). As far as we are aware, until this case, the only square rulings on the issue upheld the same-day-continuation position (rulings issued in two cases by the same judge). *Ultratec*, 45 F. Supp. 3d at 910; *MOAEC*, 568 F. Supp. 2d at 980–82.

Even as to patents currently in force, according to the government's calculations and studies commissioned by amicus Intellectual Property Owners Association, overturning the PTO's position would affect the priority dates of more than ten thousand patents. U.S. Br. at 29–30; Intellectual Property Owners Association Br. at 13–14. For those and decades of earlier patents, it is plausible that applicants relied on the policy approving same-day continuations in at least two ways. First, in the PTO, applicants have likely relied on the policy in deciding when to file their continuations; the PTO provides notice of the expected issuance date of the (soon-to-be) parent application, U.S. Br. 30 n.5, and we are informed that such notice is pretty reliable as to an earliest date of issuance, *see* Oral Arg. at 11:57–12:42. Applicants' reliance on the PTO position in timing their filing of continuations need not reflect the safest of lawyerly practices to be given weight. Second, after such same-day continuations issued as patents, the patentees plausibly made investments based on assessments of validity using the earlier priority dates. We see no basis for denying the existence of a facially large disruptive effect were we now to repudiate the same-day-continuation policy.

In short, the repeated, consistent pre-1952 and post-1952 judicial and agency interpretations, in this area of evident public reliance, provide a powerful reason to read

section 120 to preserve, not upset, the established position.  And the conclusion is reinforced by the fact that Congress has done nothing to disapprove of this clearly articulated position despite having amended section 120 several times since its first enactment in 1952.  *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 827 (2013); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986); *Nat'l Labor Relations Bd. v. Bell Aerospace Co.*, 416 U.S. 267, 274–75 (1974).

This is not a case, as we have explained, where the language of the statute actually contradicts the longstanding judicial and agency interpretation.  Nor is it a case in which the longstanding agency position is plainly outside the agency's granted authority.  Here, the position is an essentially procedural one establishing when the agency will consider an input into its process (the legal act of "filing") and an output of its process (the legal act of "patenting") to occur relative to each other—neither one being a precisely identifiable self-defining physical act, but a legally defined event.  Similar "deeming" determinations in the federal courts, *e.g.*, Fed. R. App. P. 4(a)(2), 4(a)(7)(A)(ii), 25(a)(2)(A) & (B), have long been treated as non-substantive, procedural matters under the Rules Enabling Act, 28 U.S.C. § 2072.  *See Hanna v. Plumer*, 380 U.S. 460, 463–65 (1965) (methods of serving process to initiate litigation).  The PTO has been granted authority to establish procedures that organize its processing of requests to issue (or cancel) patents, from entry to exit.  *See* 35 U.S.C. § 2; *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1336–38 (Fed. Cir. 2008); *Lacavera v. Dudas*, 441 F.3d 1380, 1383 (Fed. Cir. 2006); *In re Sullivan*, 362 F.3d 1324, 1328 (Fed. Cir. 2004); *see also Tafas v. Doll*, 559 F.3d 1345, 1352–53 (Fed. Cir. 2009), *vacated*, 328 F. App'x 658 (Fed. Cir. 2009); *id.* at 1365 (Bryson, J., concurring).

Two final points.  First, HTC makes no meaningful argument for overturning the same-day-continuation

practice independent of its argument that the section 120 phrase at issue must be read as using a "day" as the unit of time for determining beforeness. Indeed, once we conclude that the phrase permits consideration of whether filing was before patenting *within* a single day, any argument against same-day continuations runs into insuperable difficulties, given *Godfrey* and the PTO's authority, supported by obvious practical considerations, to declare when the events of "filing" and "patenting" are deemed to occur within the same day. Second, we have no occasion to address the questions that would arise if the PTO now changed its longstanding policy on same-day continuations.

CONCLUSION

The judgment of the district court as to the '720, '181, and '105 patents is reversed and remanded.

**REVERSED AND REMANDED**