# United States Court of Appeals for the Federal Circuit

_____

**GREAT CONCEPTS, LLC,**
*Appellant*

**v.**

**CHUTTER, INC.,**
*Appellee*

**KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

_____

2022-1212

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Nos. 91223018, 92061951.

_____

OPINION ISSUED:  October 18, 2023
OPINION MODIFIED:  January 10, 2024*

_____

---

\* This opinion has been modified and reissued following an unopposed petition for panel rehearing filed by Intervenor.  The only change is the revision of the sentence on page 13 that now begins "Section 14(3) . . ."

LAUREN ANN DEGNAN, Fish & Richardson P.C., Washington, DC, argued for appellant. Also represented by JARED HARTZMAN; CYNTHIA WALDEN, Boston, MA.

BRUCE WILLIAM BABER, King & Spalding LLP, Atlanta, GA, argued for appellee. Also represented by KATHLEEN E. MCCARTHY, New York, NY.

MARY BETH WALKER, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor. Also represented by CHRISTINA J. HIEBER, THOMAS W. KRAUSE, FARHEENA YASMEEN RASHEED.

_____

Before DYK, REYNA, and STARK, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* STARK.

Dissenting Opinion filed by *Circuit Judge* REYNA.

STARK, *Circuit Judge*.

Great Concepts, LLC ("Great Concepts") appeals the Trademark Trial and Appeal Board's ("Board") decision cancelling registration of its trademark, "DANTANNA'S," due to the filing of a fraudulent declaration by a former attorney for Great Concepts. The attorney submitted the false declaration to the U.S. Patent and Trademark Office ("PTO") in connection with Great Concepts' effort to obtain incontestable status for its registered trademark. Because the pertinent part of the applicable statute limits the Board's authority to cancel registration of a mark to circumstances in which the "registration was obtained fraudulently," and here there is no claim that this occurred, the Board was not permitted to cancel Great Concepts' trademark. Thus, we reverse and remand.

I

Great Concepts applied to register "DANTANNA'S" as a mark for a "steak and seafood restaurant" in 2003. Its application issued as Registration No. 2929764 (the "'764 Registration") in 2005.

In 2006, Chutter, Inc.'s ("Chutter") predecessor-in-interest, Dan Tana, petitioned the Board to cancel the '764 Registration, based on an alleged likelihood of confusion with Mr. Tana's common law "DAN TANA" mark for restaurant services. The cancellation proceeding was suspended during the pendency of a civil action in the Northern District of Georgia, in which Mr. Tana sued Great Concepts for trademark infringement. On September 15, 2009, the district court granted summary judgment in favor of Great Concepts, a ruling that was affirmed by the Eleventh Circuit on July 15, 2010. *See Tana v. Dantanna's*, No. 08-cv-975-TWT, 2009 WL 10668358 (N.D. Ga. 2009), *aff'd*, 611 F.3d 767 (11th Cir. 2010). Eventually, on December 14, 2010, the Board dismissed Mr. Tana's cancellation proceeding "based on petitioner's apparent loss of interest," after he failed to respond to the Board's order to show cause. J.A. 310.

Meanwhile, on March 8, 2010, Great Concepts' former attorney, Frederick Taylor, filed with the PTO a combined declaration of use, pursuant to Section 8 of the Lanham Act, and declaration of incontestability, pursuant to Section 15 of the same Act. *See* 15 U.S.C. §§ 1058, 1065. In the Section 15 portion of the declaration, relating to Great Concepts' effort to obtain incontestable status for its already-registered mark, Mr. Taylor declared, among other things, "there is no proceeding involving said rights pending and not disposed of either in the U.S. Patent and Trademark Office or in the courts." J.A. 51, 87; *see also* 37 C.F.R. § 2.167(d), (e) (noting requirements for Section 15 declaration); 15 U.S.C. § 1065. This statement was false: as of March 2010, both the cancellation proceeding in the PTO

and the Eleventh Circuit appeal from Mr. Tana's district court action were still pending.

In July 2015, Chutter petitioned the PTO for cancellation of Great Concepts' "DANTANNA'S" mark based on Mr. Taylor's 2010 false Section 15 affidavit.[1] On September 30, 2021, the Board issued a decision finding that Mr. Taylor's Section 15 declaration was fraudulent and cancelling Great Concepts' registration of its trademark under Section 14 of the Lanham Act. Great Concepts timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a)(1). We apply *de novo* review to the Board's legal conclusions. *See Bose*, 580 F.3d at 1243.

## II

Resolution of this appeal turns on our interpretation of various provisions of the Lanham Act. We reproduce below a portion of the Supreme Court's helpful background on the Lanham Act, which notes several trademark concepts that are pertinent to our analysis:

> Trademark law has a long history, going back at least to Roman times. The principle underlying trademark protection is that distinctive

---

[1] We use "declaration" and "affidavit" interchangeably, as the regulation, *see* 37 C.F.R. § 2.167, cases, *see e.g.*, *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009), and parties do. We refer to Mr. Taylor's affidavit as "false" and "fraudulent" because the Board found it was both. *See, e.g.*, J.A. 14, 26. Great Concepts admits the Section 15 affidavit was untrue, *see* Appellant Br. at 33, but denies it was filed with fraudulent intent, *see, e.g.*, *id.* at 34. By using "false" and "fraudulent" in this opinion, essentially interchangeably, we do not mean to suggest we are affirming the Board's intent findings that we do not reach.

> marks – words, names, symbols, and the like – can help distinguish a particular artisan's goods from those of others. One who first uses a distinct mark in commerce thus acquires rights to that mark. Those rights include preventing others from using the mark.
>
> Though federal law does not create trademarks, Congress has long played a role in protecting them. In 1946, Congress enacted the Lanham Act, the current federal trademark scheme. As relevant here, the Lanham Act creates at least two adjudicative mechanisms to help protect marks. First, a trademark owner can register its mark with the PTO. Second, a mark owner can bring a suit for infringement in federal court.
>
> Registration is significant. The Lanham Act confers important legal rights and benefits on trademark owners who register their marks. Registration, for instance, serves as constructive notice of the registrant's claim of ownership of the mark. It also is prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate. And once a mark has been registered for five years, it can become incontestable.

*B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142-43 (2015) (internal citations and quotation marks omitted).

Once obtained, continued registration of a mark requires compliance with Section 8 of the Lanham Act.

Section 8 requires the mark owner, "at the end of the sixth year after the date of registration and at the end of each successive ten-year period after the date of registration," to "file a Section 8 Declaration of Continued Use, 'an affidavit setting forth those goods or services recited in the registration on or in connection with which the mark is in use in commerce.'" *Bose*, 580 F.3d at 1242 n.1 (quoting 15 U.S.C. § 1058(b)(1)).

A registered mark may be challenged as invalid on grounds including that the mark is confusing, descriptive, generic, functional, or abandoned. *See* 15 U.S.C. § 1052. To make it more difficult for a mark to be invalidated, the owner of a registered mark may seek to obtain "incontestable" status for it. Incontestability is governed by Section 15 of the Lanham Act. Section 15 provides that a registered trademark may acquire incontestable status (subject to certain conditions not at issue here) after "such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce." 15 U.S.C. § 1065.

An incontestable mark "shall be *conclusive* evidence of the validity of the registered mark." 15 U.S.C. § 1115(b) (emphasis added). A registered mark that has not achieved incontestable status, however, is only "*prima facie* evidence of the validity of the registered mark." *Id.* § 1115(a) (emphasis added). Thus, it is more burdensome to prove invalidity of a registered incontestable mark than it is to do so for a mark that is not incontestable.

Section 14 of the Lanham Act sets out the circumstances under which the registration of a mark may be challenged. In pertinent part, it provides:

> A petition to cancel a registration of a mark, . . . may . . . be filed as follows by any person who believes that he is or will be damaged . . .

> by the registration of a mark on the principal register . . .
>
> (3) At any time if . . . *its registration was obtained fraudulently . . . .*

15 U.S.C. § 1064 (emphasis added). "Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *Bose*, 580 F.3d at 1243 (internal quotation marks omitted).[2]

### III

In this appeal, we must decide whether Section 14 of the Lanham Act, 15 U.S.C. § 1064, permits the Board to cancel a trademark's registration due to the owner's filing of a fraudulent Section 15 declaration for the purpose of acquiring incontestability status for its already-registered mark. The Board has long believed it has such power, *see* J.A. 14-15; *see also Crown Wallcovering Corp. v. Wall Paper Mfrs. Ltd.*, 188 U.S.P.Q. 141, 1975 WL 20837, at *4 (T.T.A.B. 1975), and it exercised such purported authority here to cancel Great Concepts' registration. We conclude, however, that Section 14 does not permit the Board to cancel a registration in these circumstances.

### A

---

[2]    While Great Concepts challenges the Board's findings that the elements of fraud were proven here, we do not reach that portion of its appeal because we agree with Great Concepts that, even assuming fraud occurred, Section 14 does not provide authority for the PTO to cancel Great Concepts' registration based on a fraudulent Section 15 affidavit.

Before turning to the issue of statutory interpretation presented in this case, we must address two preliminary matters.

First, we reject Chutter's and the PTO's contention that Great Concepts failed to preserve its statutory interpretation argument at the Board. We do not agree that this issue was forfeited. Instead, we find that Great Concepts adequately presented its contentions to the Board.

In its briefing to the Board, Great Concepts explained that a Section 15 declaration only relates to a mark's incontestability, not its registration. *See* J.A. 1756-60; *see also* J.A. 1757 (Great Concepts arguing to Board that "while an allegedly fraudulent section 15 affidavit may affect a registration's incontestability status, it does not necessarily provide grounds for cancellation of the registration"). Great Concepts then cited to a treatise, which stated that "'fraud in a Section 15 incontestability affidavit or declaration should *only serve to eliminate the incontestable status of the registration and not result in the cancellation of the registration itself.*'" J.A. 1757 (quoting 6 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 31:81 (5th ed. 2019) ("McCarthy")). Great Concepts' argumentation provided the Board a fair opportunity to address whether Section 14 authorizes it to cancel a registration based on a fraudulent Section 15 declaration.[3]

---

[3]    Even if the issue were forfeited (and it was not), we have discretion to resolve an issue not passed on in the tribunal we are reviewing "[i]f . . . the ground urged is one of law, and that issue has been fully vetted by the parties on appeal." *Glaxo Grp. Ltd. v. TorPharm, Inc.*, 153 F.3d 1366, 1371 (Fed. Cir. 1998). That situation is presented here. *See* Appellant Br. at 14-32; Appellee Br. at 23-40;

Second, we reject Chutter's contention, with which the dissent agrees, that we should view this case as involving a fraudulent *Section 8* declaration, and not just a fraudulent Section 15 declaration. The PTO has not joined Chutter in making this argument on appeal.[4]  Furthermore, the

---

Intervenor Br. at 26-33; Reply Br. at 2-18.  We have discretion to reach the statutory interpretation issue for the additional reason that it presents a question of exceeding importance: whether an agency, which is a creature of statute, has been acting *ultra vires* for years.

[4]    In practice, the PTO appears to treat combined Section 8 and 15 declarations as separate filings, even when they are included together in a single document.  *See generally* Trademark Manual of Examining Procedure ("TMEP") § 1605.05 ("The filing fee for a combined §8 and §15 affidavit or declaration is the sum of the cost of the individual filings."); *see also id.* §§ 1605, 1605.05 (describing separate remedies for curing deficiencies in Section 8 or Section 15 portions of combined declaration).  The dissent's citation to 37 C.F.R. § 2.168, which provides in pertinent part that "[t]he affidavit or declaration filed under section 15 . . . may also be used as the affidavit or declaration required by Section 8, if the affidavit or declaration meets the requirements of both Sections 8 and 15," does not indicate that a declaration seeking to meet the requirements of both sections is treated by the PTO as a single declaration. Likewise, that the PTO finds it convenient to provide information about Section 15 declarations on the same webpage as it provides information about Section 8 (as well as Sections 9 and 71) declarations, and chose to identify this page as "Definitions for maintaining a trademark registration," does not, of course, alter the legal relationship between two different    sections    of    the    Lanham    Act.    *See* https://www.uspto.gov/trademarks/maintain/forms-file/def

Board did not base its cancellation decision on the fact that Great Concepts' Section 15 declaration happened to have been filed in connection with its Section 8 declaration of use. *See* J.A. 26.

Chutter's basis for asking us to treat the situation here as one involving a false Section 8 affidavit is that Mr. Taylor filed a combined declaration that addressed the requirements of Section 8 – for continued registration – and Section 15 – for the incontestability of the registered mark. J.A. 87-88. While we have held that fraud in connection with *maintaining* a registration is actionable in a Section 14 cancellation proceeding, *see Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986) ("Fraud in obtaining renewal of a registration amounts to fraud in obtaining a registration within the meaning of section 14(c) of the Lanham Act."), here there was no such fraud, because there is no evidence (or even allegation) that Mr. Taylor's *Section 8* declaration was false. A Section 15 declaration is in no way necessary to maintaining registration of a mark. Here, the happenstance that Mr. Taylor filed a *combined* declaration, which had one portion devoted to Section 8 and another to Section 15, does not render the Section 8 portion false or fraudulent, and neither does it make the Section 15 portion part of an effort to "maintain" a registration.

Thus, as the case comes to us, the issue is only whether a fraudulent Section 15 affidavit, filed in pursuit of incontestable status of an already-registered mark, is a proper

---

initions-maintaining-trademark (last visited September 22, 2023); *see also* https://www.uspto.gov/trademarks/maintain ("Because the time for filing a Section 8 declaration coincides with the time for filing a Section 15 declaration of incontestability for many applicants, a combined Sections 8 & 15 form exists, above.") (last visited September 22, 2023); Dissent at 13-14 n.6.

basis on which to predicate a Section 14 cancellation of a registration.[5]  We turn squarely to that question now.

B

We conclude that Section 14, which allows a third party to seek cancellation of registration when the "registration was obtained fraudulently," does not authorize cancellation of a registration when the incontestability status of that mark is "obtained fraudulently."

"As in any case of statutory construction, our analysis begins with the language of the statute." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (internal quotation marks omitted).  "[W]here the statutory language provides a clear answer, it ends there as well." *Id.*  Moreover, "we must read the words in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 486 (2015) (internal quotation marks omitted).  In sum, "we employ traditional tools of statutory construction and examine the statute's text, structure, and legislative history, and apply the relevant canons of interpretation." *Atilano v. McDonough*, 12 F.4th 1375, 1380 (Fed. Cir. 2021) (internal quotation marks omitted).  Undertaking this analysis, we conclude that Section 14 does

---

[5]    Even Chutter does not contend that this case involves any allegation that Great Concepts obtained its original registration fraudulently.  Nor could it, as Chutter is collaterally estopped from making such an allegation, given its earlier failures to prove such fraud.  *See* J.A. 299 (Board concluding that Chutter's predecessor, Mr. Tana, "failed to identify clearly any specific false, material misrepresentations of fact that [Great Concepts] made . . . with the intent of obtaining a registration to which [it] was not entitled").

not authorize the Board to cancel a registration based on a fraudulent Section 15 declaration.

As we have already noted, Section 14 permits a third party to file "[a] petition to cancel a registration of a mark" "[a]t any time if" the registered mark's "registration was *obtained fraudulently*." 15 U.S.C. § 1064 (emphasis added). "Obtaining" has a plain and ordinary meaning, "'[t]o get hold of by effort; to gain possession of; to procure; to acquire, in any ways.'" *W. Union Tel. Co. v. Hansen & Rowland Corp.*, 166 F.2d 258, 260-61 (9th Cir. 1948) (quoting Webster's New International Dictionary, 2d ed. at 1682); *see also Obtain*, Black's Law Dictionary (11th ed. 2019) ("To bring into one's own possession; to procure, esp. through effort"). The parties do not appear to dispute that Great Concepts obtained *something* through Mr. Taylor's Section 15 declaration.

The question becomes *what* Great Concepts obtained, but this is not difficult to answer. What Great Concepts acquired through Mr. Taylor's fraudulent Section 15 declaration was incontestable status for its already-registered trademark. Under the Lanham Act, registration and incontestability are different rights. *See Duffy-Mott Co. v. Cumberland Packing Co.*, 424 F.2d 1095, 1099-100 (CCPA 1970) (acquiring incontestable status under Section 15 is "a matter of acquiring a new right," distinct from "maintaining the registration in force" under Section 8). Indeed, registration is a prerequisite to incontestability. Rendering an already-registered mark harder to invalidate, which is the impact of incontestable status, is not the same thing – or even nearly the same thing – as getting, acquiring, or securing registration of the mark in the first place. Hence, fraud committed in connection with obtaining incontestable status is distinctly *not* fraud committed in connection with obtaining the registration itself. *See generally* McCarthy § 31:81 ("[I]ncontestable status does

not 'obtain' the 'registration.'  The registration already existed with 'contestable' status.").

Mr. Taylor's Section 15 declaration in no way caused or even contributed to Great Concepts obtaining registration for its mark.  Nor could it have, for Great Concepts obtained its registration back in 2005 and Mr. Taylor did not file his declaration until 2010.  Given that registration and incontestability are different rights, and Section 14 only identifies fraud in connection with acquiring one of these rights (registration) as being a basis for a cancellation proceeding at the Board, it follows that fraud in connection with acquiring incontestable status is not a basis for a Section 14 cancellation proceeding.

Section 14(3) lists numerous bases on which a third party may seek Board cancellation of a registered mark at any time, including that the mark has become generic for the goods or services, is functional, has been abandoned, the registration was fraudulently obtained, or the mark is being used to misrepresent the source of the goods.  *See* 15 U.S.C. § 1064(3).  Notably absent from this list is fraud committed in connection with an incontestability declaration.  When, as here, Congress sets out a lengthy list of statutory provisions, we will not lightly add to that list, lest we contradict what may well have been an intentional omission.  *See, e.g.*, *Schlafly v. Saint Louis Brewery, LLC*, 909 F.3d 420, 425 (Fed. Cir. 2018) ("The statutory interpretative canon of expressio unius est exclusio alterius, provides that 'expressing one item of [an] associated group or series excludes another left unmentioned.'") (quoting *NLRB v. Sw. Gen., Inc.*, 580 U.S. 288, 302 (2017)).

Section 33(b) of the Lanham Act further confirms that a Section 14 cancellation proceeding is not available as a remedy for a fraudulent Section 15 incontestability declaration.  Section 33(b) provides that an accused infringer may attempt to prove in an infringement action that "the

incontestable right to use the mark [being asserted against the infringer] was obtained fraudulently" by the mark owner.  15 U.S.C. § 1115(b)(1).  Importantly, the remedy Congress provided for litigants in Section 33(b) – for the specific circumstances presented here, i.e., fraud in connection with obtaining incontestable status – was loss of incontestable status, and *not* also loss of registration.  *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 199 n.6 (1985) (stating that "defenses enumerated in § 33(b) are not substantive rules of law which go to the validity or enforceability of an incontestable mark" but rather impact only "the evidentiary status of registration where the owner claims the benefit of a mark's incontestable status").  Given that Congress, in Section 33(b), expressly contemplated our very circumstances – an incontestable registered mark, where incontestable status was obtained by fraud – and provided that the remedy for it was loss of incontestable status, we are unpersuaded that Congress also, in Section 14, silently authorized the PTO to impose a different, more severe remedy, cancellation of registration, for this same offense.  *See generally Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").  It follows that Congress did not provide the Board authority to cancel registration when a mark owner commits fraud in connection with seeking to obtain incontestability status.

## C

In pressing us to reach a different conclusion, Chutter presents several arguments.  While they are not unreasonable, neither are they persuasive.

First, like the dissent and the Director, Chutter argues that we should adhere to the Board's longstanding precedent, as announced in the Board's 1975 opinion in *Crown Wallcovering*, holding that a fraudulent declaration filed in support of incontestability status can be the basis for Board cancellation of a registered mark. Board decisions do not, of course, bind this court. *See, e.g.*, *In re Rudy*, 956 F.3d 1379, 1383 (Fed. Cir. 2020).

In *Crown Wallcovering*, the Board held:

> [I]t is clear that the filing of a fraudulent Section 15 affidavit would enable a registrant to obtain a new right, namely, incontestability, to which he would not otherwise be entitled . . . . Under such circumstances, it is adjudged that the filing of a fraudulent Section 15 affidavit constitutes a ground for cancelation of the involved registration within the purview of Section 14(c).

1975 WL 20837, at *4.[6] The Board felt that the decision of our predecessor, the Court of Customs and Patent Appeals ("CCPA"), in *Duffy-Mott* – a case in which a new applicant for a registered mark was opposed by a mark owner who already had obtained an incontestable mark – "buttressed" its conclusion. *Id.*

We disagree. *Duffy-Mott* involved a mark owner, whose predecessor-in-interest had acquired an incontestable mark by filing a combined Section 8 and Section 15 affidavit, in which the Section 15 portion contained a false

---

[6]    Congress amended Section 14 of the Lanham Act in 1988, replacing the lettered subsections with the current numbered subsections. *See* 15 U.S.C. § 1064, *amended by* Pub. L. No. 100-667, sec. 1883, 102 Stat. 3935 (Nov. 10, 1988). Section 14(c) thereby became Section 14(3).

16                           GREAT CONCEPTS, LLC v. CHUTTER, INC.

statement, and the Section 8 portion did not – precisely the situation we confront here. *See* 424 F.2d at 1098-99. That mark owner then opposed an applicant's attempt to register its own similar mark. *See id.* at 1096. The applicant in *Duffy-Mott* did *not* ask the Board to cancel the mark owner's registered mark due to the fraudulent Section 15 affidavit, believing the Board had no authority to do so, just as we hold today. *See id.* at 1099. And, importantly, the CCPA expressly declined to reach the question of whether Section 14 permitted cancellation based on fraudulent statements in a Section 15 declaration. *See id.* at 1099 n.8.

The sanction the applicant sought in *Duffy-Mott*, which is the sanction the CCPA imposed, was to preclude the mark owner from relying on its incontestable, registered mark as a basis to oppose applicant's application for its own mark. *See id.* at 1099-1100.[7] Consequently, the mark

---

[7] Chutter and the Director argue that the sanction imposed in *Duffy-Mott* effectively cancelled the mark owner's registration because the mark owner was precluded from relying on its registration "*for any purpose* in the Patent Office or in this court [i.e., the CCPA] on appeal therefrom." 424 F.2d at 1099 (emphasis added); *see also Stardust, Inc. v. Birdsboro Knitting Mills, Inc.*, 119 U.S.P.Q. 270, 1958 WL 6011, at \*1 n.5 (T.T.A.B. 1958) (holding that owner of incontestable registered mark, who made false statement about continued use of its mark, may not "rely on this registration for any purpose in the Patent Office") (cited in *Duffy-Mott*, 424 F.2d at 1099). But the very next sentence of the opinion states that "filing a sworn statement as far from the truth as was that which was filed precludes opposer from relying on the registration *in these proceedings.*" *Duffy-Mott*, 424 F.2d at 1099 (emphasis added). We understand the sanction

owner in *Duffy-Mott* came away from the proceeding still in possession of a registered mark – which could be asserted against infringers in subsequent actions – just as Great Concepts seeks to do here, and just as we hold Great Concepts may do. Therefore, we do not view *Duffy-Mott* – a case in which our predecessor court declined to reach the question posed to us here, and in which no party thought the Board could do what it did here – as particularly supportive of the Board's decision in *Crown Wallcovering* or of the decision we are reviewing today.[8]

Relatedly, the dissent states that we have already endorsed the holding of *Crown Wallcovering*, and further suggests that our decision today is a break with stare decisis. *See* Dissent at 10, 15. We disagree. Neither of our precedents on which the dissent relies, *Torres*, 808 F.2d at 47,

---

imposed on the mark owner in *Duffy-Mott* to have been limited to precluding the mark owner's reliance on its registration in the very proceeding under review and not also to have cancelled that registration for all purposes. In other words, the CCPA only granted the narrower relief the applicant actually sought in the case.

[8]    In fact, in the course of *not* deciding the issue we are required to resolve today, *Duffy-Mott* "consider[ed] the purpose for which the false affidavit was filed in order to determine the importance of the untrue allegations." 424 F.2d at 1099. It went on immediately thereafter to distinguish between fraud in a Section 15 affidavit filed in connection with obtaining incontestability and fraud in connection with "maintaining the registration in force, which can be done by an affidavit under section 8(a)." *Id.* If anything, these statements in *Duffy-Mott* support our view that Section 15 fraud is not a basis for cancellation of a registration.

and *Bose*, 580 F.3d at 1243, 1245, involved a Section 15 declaration or even mentions Section 15. As Great Concepts observes, *see* Appellant Br. at 10, the question we are now deciding – whether a false or fraudulent Section 15 declaration can itself be a sufficient basis on which the Board may, pursuant to Section 14, cancel a registration – has not been previously decided by our court. Accordingly, there is no binding precedent and we are not failing to let one of our earlier decisions stand.

Second, Chutter points to a decision of one of our sister circuits as support for its position. In *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) (internal citations omitted), the Ninth Circuit stated: "Any false statements made in an incontestability affidavit may jeopardize not only the incontestability claim, but also the underlying registration. In particular, filing a fraudulent incontestability affidavit provides a basis for canceling the registration itself." *Robi* cites to *Duffy-Mott* and *Crown Wallcovering* as the bases for its conclusions. *See id.* As we disagree with the Board's reading of *Duffy-Mott* and disagree that *Duffy-Mott* supports the Board's holding in *Crown Wallcovering*, we are likewise unpersuaded by *Robi*.[9]

Next, Chutter suggests that if we disagree with its statutory interpretation, we should simply approve "an extra-statutory basis for cancellation." Appellee Br. at 33. In support of its invitation for this act of judicial procreation, Chutter cites a law review article. *See id.* (citing Theodore

---

[9]    We agree, instead, with the conclusion reached by the district court in *O'Reilly Auto. Stores, Inc. v. Bearing Techs. Ltd.*, No. 16-3102-CV-S-BP, 2018 WL 4323943, at *5 (W.D. Mo. 2018) (holding Section 14 "does not state that a registration can be canceled because of a fraudulent Section 15 filing").

H. Davis Jr. & Lauren Brenner, *Allegations of Fraudulent Procurement and Maintenance of Federal Registrations Since In re Bose Corp.*, 104 Trademark Rep. 933, 998-99 (2015)).[10] We believe, instead, we are obligated to enforce the limitations on the Board's cancellation authority imposed by statute.

Finally, Chutter makes arguments based on policy. It contends our holding will encourage fraud. The dissent likewise fears that we have "construct[ed] a milepost in the trademark administrative continuum, at which point (Section 15) fraudulent wrongdoing is green-lighted." Dissent at 12. Together, Chutter and the dissent contend that if the only consequence for filing a fraudulent affidavit in pursuit of incontestability is the loss of incontestability, there is no consequence, since the mark owner was not entitled to incontestable status in the first place.

We certainly do not intend by our holding today to encourage fraud – of any type. We fully agree with the CCPA that intentionally using a false statement to acquire an important right, including the right of incontestable status, "can scarcely be characterized as mere carelessness or misunderstanding," so we further agree that some significant sanction is "necessary to deter the further development of

---

[10] Both parties identified secondary sources supporting their interpretation of the statute. *Compare* Appellee Br. at 32 (citing 3 Jerome Gilson & Anne Gilson Lalonde, *Trademarks* § 9.03 (2022)) ("A fraudulent Section 15 affidavit is grounds for cancellation of the registration under Section 14(3)."), *with* Appellant Br. at 26 (citing McCarthy § 31.81) ("[F]raud in a Section 15 incontestability affidavit or declaration should serve only to eliminate the incontestable status of the registration and not result in cancellation of the registration itself.").

such a cavalier attitude toward statements in affidavits under section 15." *Duffy-Mott*, 424 F.2d at 1100.

We do not, however, think our opinion means that committing fraud in connection with obtaining incontestability becomes a costless offense. As suggested in *Duffy-Mott* (and not contested by Great Concepts), the Board can remove the mark's incontestability status. *See* 424 F.3d at 1099-1100; *see also Park 'N Fly*, 469 U.S. at 199 n.6; 15 U.S.C. § 1115(b)(1); 3 McCarthy § 31:81. Loss of incontestable status is not nothing; it means that, if challenged, a mark owner will have a harder time preserving the validity of its registered mark.

More importantly, nothing in this opinion should be read to mean that the Board is powerless to address fraud, including fraud committed solely in conjunction with the filing of a Section 15 declaration. While this case does not call upon us to delineate the scope of remedies available to the Board, or even to identify "the maximum penalty for fraud committed to obtain incontestability," Dissent at 16, we are in full agreement with the parties that, at minimum, the Board may sanction any attorney who commits fraud before it.[11] A Section 15 declaration is filed under penalty of perjury, *see* J.A. 87 ("The undersigned being hereby warned that willful false statements and the like

---

[11]    For example, Great Concepts urged that "when an investigation uncovers attorney misconduct," the attorney should be referred the PTO's Office of Enrollment and Discipline. *See* Appellant Br. at 30 n.12 (citing Hirshfeld & Gooder, *USPTO's Comprehensive Strategy to Fight Trademark Fraud*, Director's Blog: the latest from UPSTO leadership (Aug. 18, 2021), https://www.uspto.gov/blog/director/entry/uspto-s-comprehensive-strategy-to).

are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001."), so the attorney filing such an affidavit is vulnerable to penalties that might even include criminal prosecution. Our ruling that a Section 14 cancellation of registration is not an available remedy for a fraudulent Section 15 declaration – a conclusion we reach because Congress chose not to empower the Board with the ability to impose that specific consequence – is a ruling only that this one remedy is unavailable, leaving the Board, we expect, with sufficient mechanisms to adequately deter fraud.

Even if it were true that our decision would result in an unwelcome increase in fraud perpetrated against the Board – which, again, we do not believe it will – we would nonetheless adhere to the unambiguous language of the statute. *See, e.g.*, *W. Union Tel. Co. v. Lenroot*, 323 U.S. 490, 501 (1945) ("[W]e take the Act as Congress gave it to us, without attempting to confirm it to any notions of what Congress would have done if the circumstances of this case had been put before it."). Whether we would prefer a different result be reflected in the statute is irrelevant to our responsibility to decide the case before us based on the law as it exists.

IV

We have considered Chutter's remaining arguments – including its analogy to patent law, *see* Appellee Br. at 60, which is governed by a different statute[12] – and find them unpersuasive. Because Section 14 does not authorize the Board to cancel a registration based on a fraudulent Section 15 declaration, which is necessarily directed only to obtaining incontestable status of an already-registered

---

[12]    Great Concepts, too, makes comparisons to patent law. *See, e.g.*, Appellant Br. at 35-38.

mark and does not involve a "registration [that] was obtained fraudulently," we do not reach the issue of whether the Board erred in finding that Mr. Taylor committed fraud. Based on the statute, we reverse the Board's cancellation of Great Concepts' registration. We remand, however, so that the Board may consider whether to declare that Great Concepts' mark does not enjoy incontestable status and to evaluate whether to impose other sanctions on Great Concepts or its attorney.

## REVERSED AND REMANDED

### COSTS

Costs awarded to appellant.

# United States Court of Appeals
# for the Federal Circuit

---

**GREAT CONCEPTS, LLC,**
*Appellant*

**v.**

**CHUTTER, INC.,**
*Appellee*

**KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2022-1212

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Nos. 91223018, 92061951.

---

REYNA, *Circuit Judge*, dissenting.

Today, the majority instructs the Patent and Trademark Office that it is without authority to cancel a trademark registration in situations where a registrant defrauds the agency with false declarations intended to deceive the agency into granting incontestable rights for its continued use of a mark. It instructs the agency, and the general public, that there exists a milepost in the

trademark administrative continuum, a green-light, beyond which inequitable conduct is encouraged by the promise of great gain with little to no meaningful risk to the registrant. But there is harm. First, this court should be wary not to excuse fraud that is undertaken at any stage within an administrative process. Second, this court must recognize that the grant and protection of intellectual property rights involves a pact with the general public. This case represents a violation of that pact.

I respectfully dissent.

## I. CANCELLATION BASED ON FRAUD

Great Concepts, LLC ("Great Concepts") submitted a single declaration through counsel, who declared under penalty of perjury that there were no adverse judgments or any pending proceedings involving Great Concepts' registered mark. The declaration was false. The false declaration enabled Great Concepts to maintain its registration and to obtain valuable incontestability rights for its mark. Upon discovery of the falsehood, Great Concepts took no remedial action to correct it, and failed to inform the Trademark Trial and Appeal Board (the "Board") even after the false declaration was challenged. The Board determined that the circumstances supported a finding of fraud. Based on its longstanding interpretation of the Lanham Act as allowing cancellation of a trademark registration based on fraud, the Board cancelled Great Concepts' trademark registration. I would affirm the Board's action because it accords with precedent, fits with statutory objectives, safeguards the integrity of the trademark system, and protects public interest.

The Lanham Act creates a federal registration system to enforce and protect trademark rights. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015). The system is administered by the United States Patent and Trademark Office (the "PTO"). *See id.* The statute establishes a process by which a trademark owner applies to

have its mark registered with the PTO. Among other things, registration secures ownership of and exclusive rights to use the underlying mark in commerce. *See id.* at 142–43 (discussing rights and benefits a registrant can obtain under the Lanham Act).

Section 8 of the Lanham Act provides a process that grants a registrant continued rights to the registered mark. To obtain such rights, the registrant must submit a sworn declaration to affirm that its mark has been in continued use. *See* 15 U.S.C. § 1058 (requirements for affirming continued use); *see also In re Bose Corp.*, 580 F.3d 1240, 1242 n.1 (Fed. Cir. 2009) (explaining requirements for renewing a registration and affirming continued use). This declaration is a mandatory filing to keep the registration alive and avoid its cancellation. *See* 15 U.S.C. § 1058(a) (the registration "shall be canceled" if the registrant fails to file the Section 8 declaration). A Section 8 declaration is therefore a critical part of the registration process.

In addition to the Section 8 filing, the registrant may also file a Section 15 declaration. *Id.* § 1065 (requirements for "[i]ncontestability of right to use" a mark). Section 15 provides that a registrant can secure "incontestable" rights to use its mark by declaring that the mark has not been subject to any adverse decisions, and that at the time of filing, the mark was not involved in any pending proceedings. *Id.* Incontestability is prized because it constitutes "conclusive evidence" of not only the validity and ownership of a mark, but also the registrant's exclusive rights to use the mark. *Id.* § 1115(b). In this manner, the registrant's exclusive and continued rights to the mark become incontestable for the life of the mark. An incontestable registration discourages decisions to challenge the registrant's ownership of and rights to use the mark. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985) (explaining the value of incontestability, stating that incontestability "provide[s] a means for the registrant to quiet title in the ownership of his mark").

A registrant may elect to file a combined declaration of continued use and incontestability, if the requirements under *both* Sections 8 and 15 are met. Trademark Manual of Examining Procedure § 1605.05 (5th ed. 2007); *see also* 37 C.F.R. § 2.168(a).[1] Through this single combined filing, a registrant keeps its registration alive *and* attains incontestability status for its mark.

## A. Finding of Fraud

Great Concepts, through counsel, filed a combined declaration for its mark, "DANTANNA's." The one-page submission states that "Great Concepts . . . is filing a Combined Declaration of Use and Incontestability under Sections 8 & 15." J.A. 87. For incontestability, Great Concepts declared that no pending proceeding involving the mark existed at the PTO or in a court. *Id.* The declaration warns that: "[W]illful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of this document."

---

[1]    For clarity, and relevant here, this combined declaration requires Great Concepts to declare,

> The mark has been in continuous use in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce. There has been no final decision adverse to the owner's claim of ownership of such mark, or to the owner's right to register the same or to keep the same on the register; and there is no proceeding involving said rights pending and not disposed of either in the U.S. Patent and Trademark Office or in the courts.

J.A. 87; *see also* 15 U.S.C. §§ 1058, 1065.

*Id.* The document was signed by counsel for Great Concepts. J.A. 87–88.

It is undisputed that, on the date of the signing and filing and contrary to the sworn declaration, Great Concepts' mark was involved in a cancellation proceeding at the PTO and in a trademark infringement civil action. *See Tana v. Dantanna's,* 611 F.3d 767, 772–73 (11th Cir. 2010); *see also Chutter, Inc. v. Great Management Group, LLC*, No. 91223018, 2021 WL 4494251, at *7–8 (T.T.A.B. Sept. 30, 2021) ("*Decision*"). In addition, the counsel for Great Concepts that signed the declaration was also counsel to Great Concepts in the cancellation proceeding and the civil action. *See Decision*, 2021 WL 4494251, at *8; *see also* J.A. 612–13 (counsel testimony regarding his representation of Great Concepts). The Board determined that Great Concepts submitted false representations with intent to deceive, and thereby committed fraud.[2] *Decision*, 2021 WL 4494251, at *13.

In reaching its finding of fraud, the Board considered that the same counsel represented Great Concepts in the other then-pending proceedings when he attested to the absence of those very proceedings, *see id.* at *8 & n.47; that he admittedly "was not aware of the legal requirements for filing a Section 15 declaration" when he directed a paralegal to file Great Concepts' combined declaration, *id.* at *8–9; and that before signing the sworn-declaration, he failed

---

[2]    The majority opinion concedes the falsity of Great Concepts' declaration and appears to recognize its inequitable nature. *See* Maj. Op. 3, 20–21. The majority, however, does not reach the issue of whether Great Concepts committed fraud, deciding instead to reverse on the basis of no harm no foul, concluding that the registrant should be restored to the status quo prior to the filing. *See id.* at 21–22.

6                    GREAT CONCEPTS, LLC v. CHUTTER, INC.

to read it with enough care to notice that the falsity was repeated twice on the same page, *id.*

The Board also found that Great Concepts failed to correct the false information it submitted. *Id.* at \*8. After filing the declaration, Great Concepts' counsel received: (1) a PTO notice confirming receipt of the document, which includes a recitation of the false declaration; and (2) a paralegal email attaching the PTO confirmation. *Id.*; J.A. 816–20. Great Concepts did not notify the PTO of the falsehood nor otherwise take any corrective action. *Decision*, 2021 WL 4494251, at \*8 (noting that Great Concepts became aware of the falsehood at least as early as February 2014). Counsel failed to undertake any corrective action, and he continued to represent Great Concepts. *Id.* The PTO approved the submission, and Great Concepts' registration continued, now cloaked with incontestability.[3] *Id.*; *see also* J.A. 94 (PTO acceptance and acknowledgement). The deception did not end at the PTO, as from that moment, the public was falsely informed that the mark was legally incontestable.

Fraud requires a finding of intent to deceive. *Bose*, 580 F.3d at 1245. "[B]ecause direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence." *Id.* (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). Great Concepts does not dispute these legal principles. *See, e.g.*, Appellant's Br. 13 (noting the intent requirement for fraud); *id.* at 33 (noting that a deceptive intent can be inferred). Great Concepts also

---

[3]   In practice, the PTO's "approval" is pro forma and does not involve verification or formal review of this sworn declaration. *See Decision*, 2021 WL 4494251, at \*7 & n.44. As a result, unless by chance the false information is otherwise detected, the false declaration can for years effectively deflect potential challenges to the registration.

concedes that an intent to deceive can be inferred from circumstances demonstrating reckless disregard. *See* Oral Arg. 6:53–7:18; *id.* at 7:00–11 ("[O]ne can prove intent to deceive or malice based on reckless disregard for the truth.").

The circumstances surrounding Great Concepts' submission exhibit a "cavalier attitude" indicative of an intent to deceive the agency. *See Duffy-Mott Co. v. Cumberland Packing Co.*, 424 F.2d 1095, 1100 (C.C.P.A. 1970); *see also Decision*, 2021 WL 4494251, at \*9 (discussing various aspects of recklessness). They constitute sufficient evidence that "a reasonable mind might accept as adequate" to support the Board's finding of reckless disregard and inference of intent to deceive. *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085 (Fed. Cir. 2000) (quoting *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000)).

Great Concepts attempts to analogize the facts here to those in *Bose* and *Kingsdown*, where we found no intent to deceive. *See, e.g.*, Appellant's Br. 35–37 (relying on *Bose*, 580 F.3d 1240 and *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867 (Fed. Cir. 1988)); Reply Br. 19–21 (same). Both cases, however, are readily distinguishable. In *Bose*, the "false misrepresentation [was] occasioned by an honest misunderstanding." 580 F.3d at 1246. Here, by contrast, Great Concepts' counsel admittedly knew that "the statement was [not] true at the time he signed [it]." *Id.*; *see* J.A. 667 ("I clearly knew that there was a pending action"). And in *Kingsdown*, the patent prosecution counsel, in "a ministerial act," negligently transferred "numerous claims *en masse* from a parent to a continuing application," which required renumbering and reproducing similar claim language. 863 F.2d at 875. This case does not involve a misunderstanding or ministerial act. Here, Great Concepts submitted a one-page sworn declaration that twice repeated the false statements immediately preceding an express warning against false statements. J.A.

8                    GREAT CONCEPTS, LLC v. CHUTTER, INC.

87.  In addition, Great Concepts failed to take remedial action once it became aware of the false submission.

Great Concepts argues that it should not be punished for its attorney's conduct.  *See, e.g.*, Appellant's Br. 53–57.  But Great Concepts forfeited this argument by failing to raise it to the Board.  In any event, Great Concepts cannot now "avoid the consequences of the acts or omissions of [its] freely selected agent."  *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962) (finding "no merit" and as "inconsistent with our system of representative litigation" for a party to "avoid the consequences of the acts or omissions of [its] freely selected" attorney).

In sum, substantial evidence supports the Board's finding of reckless disregard and inference of an intent to deceive.  I would affirm the Board's finding of fraud.

### B. Cancellation

The Lanham Act contemplates sanctioning and deterring fraud committed to obtain rights and benefits under the statute.  Section 14 provides, in pertinent part, if a "registration was obtained fraudulently," the PTO is authorized to sanction the registrant by cancelling the mark.  15 U.S.C. § 1064 (Section 14 of the Lanham Act titled "Cancellation of registration"); *see also id.* § 1068 (authority to fashion relief in inter partes proceedings).  The Board decided to cancel Great Concepts' registration because Great Concepts' combined declaration contained false material representations of fact with the intent to deceive.  *Decision*, 2021 WL 4494251, at *12–13.  The Board's decision is supported by legal precedent.

There exists an unbroken line of decisions that supports cancelling a mark under Section 14 when a registrant fraudulently procures rights and benefits it is not entitled to.  In *Duffy-Mott*, for example, our predecessor-court in 1970 approved the PTO's decision in an opposition proceeding to sanction a registrant who "attempted by false

representations in the [PTO] to secure through [its] registration incontestable rights." 424 F.2d at 1100. "In conformity with" the Board's precedent addressing fraudulent filings and "in accord with the principle of the equitable doctrine of 'unclean hands,'" the court barred the registrant from "rely[ing] on its registration *for any purpose* in the [PTO] or in this court on appeal therefrom." *Id.* at 1099 (emphasis added).

Five years later, the Board held that fraud committed in filing a Section 15 declaration constituted a ground for cancellation. *See Crown Wallcovering Corp. v. the Wall Paper Mfgs. Ltd.*, 188 U.S.P.Q. 141, 1975 WL 20837, at *4 (T.T.A.B. 1975). The Board emphasized the invaluable benefits of attaining incontestability. *See id.* at *3. It explained that the words "'obtained fraudulently' comprehend not only the initial securance of a registration, but also the maintenance thereof, i.e., the securance of continuing rights of registration, by fraud." *Id.*; *see also, e.g.*, *Volkswagenwerk Aktiengesellschaft v. Advance Welding & Mfg. Corp.*, 184 U.S.P.Q. 367, 1974 WL 20103, at *2 (T.T.A.B. 1974) ("A contrary ruling would in effect sanction open and notorious fraud by those filing false affidavits under Sections 8, 9, 12(c) and 15 of the Statute and thereby serve to contravene and place in doubt the presumptions afforded registrations.").

A decade later, in addressing sanctions for fraudulent filings with the PTO, this court relied on *Crown Wallcovering*'s holding. *See Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986). In *Torres*, the court affirmed the Board's cancellation of a mark based on the registrant's fraudulent filings to renew a registration. *Id.* at 49. The court cited and affirmed two Board decisions cancelling the involved registration based on fraudulent post-registration filings. *Id.* at 48 (citing *G. B. Kent & Sons, Ltd. v. Colonial Chem. Corp.*, 162 U.S.P.Q. 557, 1969 WL 9139 (T.T.A.B. 1969) and *Crown Wallcovering*, 1975 WL 20837).

More recently in *Bose*, this court, citing *Torres*, reiterated that the Lanham Act imposes an obligation to "refrain from knowingly making false, material statements." *Bose*, 580 F.3d at 1245. That obligation applies to "an applicant" seeking a registration, but also to "*a registrant*" seeking *continuing and additional rights* through the registration. *Id.* (emphasis added). We "[held] that a trademark is obtained fraudulently under the Lanham Act only if *the applicant or registrant* knowingly makes a false, material representation with the intent to deceive the PTO." *Id.* (emphasis added).

There is thus significant, sufficient legal support for the Board's cancellation decision. Great Concepts has not shown otherwise. Nor does this case present any special circumstance warranting a departure from longstanding law. *See, e.g., CSX Transp., Inc. v. McBride*, 564 U.S. 685, 699 (2011) (restricting longstanding law would "ill serve the goals of 'stability' and 'predictability'" that *stare decisis* aims to ensure).

## II. MAINTAINING A MARK

Great Concepts contends, and the majority agrees, that a fraudulent Section 15 declaration cannot form the basis for cancellation under Section 14. As noted *supra*, it is well-settled that fraud sanctionable under Section 14 encompasses fraud committed in "obtaining" or "maintaining" a trademark registration. Great Concepts does not dispute this. *See, e.g.*, Reply Br. 2. Great Concepts argues that a Section 15 declaration falls outside of the purview of Section 14 because a Section 15 declaration is exercised to obtain incontestability which, in its view, does not constitute "obtaining" or "maintaining" a registration. *See* Appellant's Br. 10, 17; Reply Br. 3. The parties appear to be in agreement that filing a Section 15 declaration does not "obtain" a registration, and instead, focus their contentions on whether a Section 15 declaration is undertaken to "maintain" the registration. *See, e.g.*, Appellant's Br. 17

(asserting that a Section 15 declaration "does not maintain the registration"); Appellee's Br. 30 ("[Great Concepts'] declaration was indisputably necessary to 'maintain' the registration.").

Great Concepts rests on an assumption that its filing was an "optional Section 15 Declaration of Incontestability." Appellant's Br. 10. The majority agrees and views this case as "just a fraudulent Section 15 declaration." Maj. Op. 9. I disagree.

The fraudulent filing at issue is a *combined* Sections 8 and 15 declaration, which Great Concepts submitted for the purpose of *maintaining* its registration. *See* J.A. 87; *see also* J.A. 899 (Great Concepts CEO testimony); J.A. 614 (counsel testimony). Great Concepts intended for the filing to satisfy the mandatory requirements to *maintain* its registration; and as a result of this filing, Great Concepts' registration was kept alive and maintained in force. *See* J.A. 87; *see also* Appellee's Br. 30 ("the registration would have been cancelled under Section 8 if the declaration had not been filed"). The fact that Great Concepts elected to make a combined filing does not change the maintenance purpose or nature of this filing.[4] And because Great Concepts does not dispute that cancellation can be based on fraud committed in "maintaining" a registration, the Board's cancellation decision should be affirmed on this basis alone.

---

[4]    False statements render the entirety of this *combined declaration* untruthful. As noted *supra*, the declaration explicitly warns that willful false statements "may jeopardize the validity of *this document*," not just the falsified part. J.A. 87 (emphasis added). The declaration does not purport to apply in one part to Section 8, and in another part to Section 15. There is no such division. Instead, in "execut[ing] this document," Great Concepts declared "*all* statements" to be true. *See id.* (emphasis added).

Great Concepts also urges, and the majority agrees, that the agency's cancellation authority under Section 14 applies to certain types of fraud but never to fraud committed to obtain incontestability rights. *See* Appellant's Br. 14 (contending that the Board cannot cancel a registration based on fraud committed in a Section 15 filing); Reply Br. 2, 4; *see also* Maj. Op. 13. The majority thus constructs a milepost in the trademark administrative continuum, at which point (Section 15) fraudulent wrongdoing is greenlighted. The majority does not provide a principled rationale for such a milepost.

The rights and benefits that a registrant attains under the Lanham Act are part of a progressive administrative continuum. *See B & B Hardware*, 575 U.S. at 142–43 (discussing rights and benefits conferred under the Lanham Act); *see also* Maj. Op. 4–5 (quoting *B & B Hardware*, 575 U.S. at 142–43). The process commences with an *applicant* filing the initial application to register. *B & B Hardware*, 575 U.S. at 143; *see also* 15 U.S.C. § 1051 (requirements for application to register).

Post application, a *registrant* may, by fulfilling pertinent statutory requirements, obtain continuing and additional rights extending from the registration. These rights include: continued ownership of and exclusive rights to use the mark, and incontestability status for the mark. 15 U.S.C. § 1058 (continued use); *id.* § 1059 (renewal); *id.* § 1065 (incontestability). The statute contemplates deterring fraud committed in procuring rights and benefits under the statute—either by "an applicant" seeking registration, or "a registrant" seeking continuing and additional rights. *See Bose*, 580 F.3d at 1245 (stressing the obligation the Lanham Act imposes on the "applicant" and the "registrant" to refrain from fraud). Notably, the statute does not limit the PTO's authority to penalize fraudulent behavior that only occurs in the early stages of this administrative continuum.

The same rationale for ensuring truthful submissions applies throughout the trademark administrative continuum. *See, e.g.*, 37 C.F.R. § 11.18 (setting forth requirements for signing and filing documents with the PTO, and warning penalties for violating the same); J.A. 87 (warning against willful false statements, citing 18 U.S.C. § 1001). The necessity for sanctions to deter fraud recognizes the PTO's vested authority and discretion to regulate misconduct regardless of at which point it occurs along the continuum.[5]

I am not persuaded by Great Concepts' assertions on the purported meaning of "maintaining." Great Concepts asserts a restricted definition for "maintaining" that excludes fraudulent declarations used to obtain incontestability. According to Great Concepts, "[m]aintaining a registration" *only* encompasses "a Section 8 declaration of continuing use or a Section 9 renewal declaration." Reply Br. 2. The majority similarly states that "[a] Section 15 declaration is in no way necessary to maintaining registration of a mark" and is not "an effort to 'maintain' a registration." Maj. Op. 10.

I agree that a Section 15 declaration is optional. But the fact that a Section 15 submission is optional does not make it something other than an action of "maintaining" the registration.[6] Indeed, a Section 15 declaration "*may*

---

[5]   As the PTO noted in its decision, "[t]he agency, as well as applicants and registrants, and all who rely on the accuracy of the Registers of marks and the submissions made to the USPTO in furtherance of obtaining or maintaining registration, must be able to rely on declarations and the truth of their contents." *Decision*, 2021 WL 4494251, at *12.

[6]   The PTO advises the public that a Section 15 declaration is a "maintenance" form and lists this filing under

*also be used as* the affidavit or declaration required by section 8," which the majority does not dispute is an action of "maintaining" a mark. *See* 37 C.F.R. § 2.168 (emphasis added); *see also* Maj. Op. 10.

Dicta cited by Great Concepts does not support a contrary conclusion. Great Concepts points us to a statement in *Duffy-Mott* that Section 15 "is not a question of maintaining a registration in force, which can be done by an affidavit under section 8(a)." *Duffy-Mott*, 424 F.2d at 1099; *see* Appellant's Br. 17 (citing *Duffy-Mott*, 424 F.2d at 1099). The *Duffy-Mott* court continued, "[i]t is a matter of acquiring a new right with respect to the goods specifically recited in the affidavit." *Duffy-Mott*, 424 F.2d at 1100. The court there made these statements to emphasize the value of incontestability in that it confers an additional new right.[7]

---

the various actions for "maintaining a trademark registration." *See, e.g.*, *Registration Maintenance/Renewal/Correction Forms*, USPTO, https://www.uspto.gov/trademarks/maintain (last visited Sept. 14, 2023); *Definitions for maintaining a trademark registration*, USPTO, https://www.uspto.gov/trademarks/maintain/forms-file/definitions-maintaining-trademark (last visited Sept. 14, 2023).

[7]    Great Concepts' citation to *Bose* does not support its proposed meaning of "maintaining," either. *See* Reply Br. 2 (citing *Bose*, 580 F.3d at 1246). In addressing fraud committed in renewing a registration, the court stated that Section 14 (15 U.S.C. § 1064) allows cancellation based on "[f]raud in procuring a trademark registration or renewal." *See Bose*, 580 F.3d at 1243 (quoting *Torres*, 808 F.2d at 48); *id.* at 1246 (addressing alleged fraud in connection with the renewal filings at issue). This statement, while affirming that fraud in *renewal* falls within the purview of Section 14, does not address what actions constitute *maintaining* a registration under the Lanham Act.

Great Concepts next contends that the maximum sanction for fraud committed to obtain incontestability rights should be limited to the revocation of the incontestability status. *See* Appellant's Br. 18. To support its contention, Great Concepts asks the court to reverse the Board's decision in *Crown Wallcovering*, where the Board held that "the filing of a fraudulent Section 15 affidavit constitutes a ground for cancellation" under Section 14. *Crown Wallcovering*, 1975 WL 20837, at *4; *see* Reply Br. 3 (contending *Crown Wallcovering* "impermissibly extended Section 14 to cover fraud in Section 15 filings"). Great Concepts asserts that the Board was wrong in believing that its holding was "buttressed" by *Duffy-Mott*, because the *Duffy-Mott* court did not *cancel* the mark at issue. Appellant's Br. 17–18. This argument fails for several reasons.

First, *Duffy-Mott* involves an *opposition* proceeding. *See Duffy-Mott*, 424 F.2d at 1096. Unlike here, the applicant there did not ask for the opposer's mark to be cancelled. *See id.* at 1099. Indeed, the *Duffy-Mott* court imposed the sanction it deemed necessary and appropriate under the circumstances. *See id.* at 1100 (discussing the sanction imposed, deeming it "necessary" to deter the wrongdoing "as appears in this case").[8] The court, however, was not declaring a maximum penalty for fraudulent wrongdoing.

Great Concepts has not demonstrated why after nearly 50 years *Crown Wallcovering* should be overturned. As discussed *supra*, this court affirmed *Crown Wallcovering* in

---

[8]    Notably, the sanction in *Duffy-Mott* deprived the opposer "not only of the right of incontestability but also *of the presumptions afforded to all registrations of marks* upon the Principal Register under Section 7(b) of the Act." *See Crown Wallcovering*, 1975 WL 20837, at *4 (emphasis added) (discussing effect of the sanction imposed in *Duffy-Mott*, 424 F.2d 1095).

16                         GREAT CONCEPTS, LLC v. CHUTTER, INC.

*Torres*. *See Torres*, 808 F.2d at 48. In turn, we then endorsed and reiterated *Torres*'s holding in *Bose*. *See Bose*, 580 F.3d at 1243, 1245. These decisions continue to govern practice and conduct before the PTO, on which the public has acted in reliance.[9] Such a repeated and consistent agency position "in this area of evident public reliance, provide[s] a powerful reason" to "preserve, not upset, the established position." *Immersion Corp. v. HTC Corp.*, 826 F.3d 1357, 1365 (Fed. Cir. 2016); *see also id.* at 1359 (declining to upset "consistent, clearly articulated agency practice going back at least half a century, which has plausibly engendered large-scale reliance").

The majority agrees with Great Concepts' proposal that the maximum penalty for fraud committed to obtain incontestability is losing incontestability, the very thing the registrant was not entitled to *ab initio*. *See* Maj. Op. 13–14. And this potential loss would only materialize if the registrant somehow "gets caught." This is unreasonable and overlooks the spirit and purpose of intellectual property protection. The law is clear that it is the obligation of the applicant and registrant to refrain from any form of inequitable conduct. *See, e.g.*, *Bose*, 580 F.3d at 1245–46 (discussing obligation under the Lanham Act to refrain from fraud). It is not up to the public to act as "attorney generals" and detect fraud. And it is the wrongdoer that should

---

9    *See, e.g.*, *Mecanicos Unidos S.A. v. Victorio, LLC*, No. 92058060, 2016 WL 6833508, at *5 (T.T.A.B. Aug. 2, 2016) ("[F]raud in procuring a trademark registration occurs when an applicant for registration knowingly makes false, material representations of fact in connection with an application to register or, in the case of maintaining a registration, when a registrant makes false, material representations of fact in connection with a Section 8 or 15 affidavit." (citing *Bose*, 580 F.3d 1240, and *Torres*, 808 F.2d 46)).

bear the consequence of committing fraud, not the general public.

I disagree that Section 33(b) of the Lanham Act supports a different conclusion by somehow precluding the Board from cancelling a registration under Section 14 based on fraud in obtaining incontestability. *See* Maj. Op. 14. The majority does not dispute that Congress contemplated that fraud may occur in obtaining incontestability and that such fraud must carry a meaningful consequence. And I agree that under Section 33(b), Congress allows *a litigant*, in an infringement suit, to raise a defense and reduce the evidentiary weight of incontestability based on fraud. *See* 15 U.S.C. § 1115(b). The language of this section, however, does not "silently" dispossess *the agency*, in an administrative setting, of its authority to act under Section 14. We must not lose sight of the fact that the agency's authority in sanctioning fraud is important because it is the general public that remains falsely informed that a mark was incontestable.

Finally, we must decline the invitation to instruct the PTO on how to sanction fraudulent conduct.[10] In implementing and enforcing the Lanham Act, the PTO makes discretionary determinations based on "specialized experience" in regulating conduct before the agency, furthering "uniformity in its administrative and judicial understandings of what a national law requires." *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001); *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (explaining that

---

[10] The majority remands for the PTO to "evaluate whether to impose other sanctions on Great Concepts or its attorney." Maj. Op. 22. To the extent there is a remand, I would consider it appropriate that the PTO be given the opportunity to clarify its position on whether filing a Section 15 declaration is an action of "maintaining" a registration. *See supra* note 6.

interpretation and opinions of the agency "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"). The court has no business rejecting or usurping the agency's exercise of its vested authority. Sanctioning inequitable conduct, as here, is an action within the PTO's authority and discretion in implementing a statute that Congress entrusted it to administer. And we have long held that trademark rights under the Lanham Act, and conduct before the PTO to secure such rights, are not "divorced from equitable principles." *See Duffy-Mott*, 424 F.2d at 1099.

Fraud falls within a range of misconduct that equitable doctrines have come to identify and embrace. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (discussing evolution of equitable doctrines and range of inequitable conduct). As Great Concepts recognizes, "patent inequitable conduct cases," although not binding in the trademark context, provide valuable reference for fraud in trademark cases.[11] Appellant's Br. 35 (Great Concepts stating that in cases involving fraud, this court has looked to "patent inequitable conduct cases" (citing *Bose*, 580 F.3d at 1244–45)). In the patent context, "inequitable conduct regarding any single claim renders the entire patent unenforceable" and may further endanger the patentee's rights in related patents. *Therasense*, 649 F.3d at 1288; *see also, e.g.*, *Kingsdown*, 863 F.2d at 877. I see no reason to disturb the agency's determination that

---

[11]    The majority states that it finds unpersuasive "[appellee] Chutter's . . . analogy to patent law." Maj. Op. 21. But it is Great Concepts that repeatedly urges the court to look to *patent inequitable conduct* cases to support its case. *See e.g.*, Appellant's Br. 33–38 (Great Concepts relying on *Kingsdown*, 863 F.2d 867 and *Therasense*, 649 F.3d 1276—both are patent inequitable conduct cases—to argue no fraud); Reply Br. 19–21 (same).

cancelling the trademark registration is the appropriate sanction for the fraud committed here. Like the patent system, under the Lanham Act, a registrant secures ownership of and *exclusive rights* to use a mark in commerce, barring everyone else from using the same. *See, e.g.*, 15 U.S.C. § 1115 (registration as evidence of exclusive rights to use the mark). The public therefore has a "paramount interest in seeing that [such exclusive rights] spring from backgrounds free from fraud." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 816 (1945).

## CONCLUSION

I would affirm the Board's cancellation of Great Concepts' mark based on fraud. I respectfully dissent.